NO. 23-60300

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD
COMMISSION OF TEXAS; ASSOCIATION OF ELECTRIC COMPANIES
OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; LUMINANT GENERATION
COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER
COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY,
L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE
COUNTY POWER COMPANY, L.L.C.; STATE OF LOUISIANA;
LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; STATE
OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY; MISSISSIPPI POWER COMPANY,
*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
MICHAEL S. REGAN, Administrator, United States Environmental
Protection Agency,
*Respondents*.

**MOTION FOR LEAVE TO INTERVENE
BY AIR ALLIANCE HOUSTON, CLEAN WISCONSIN, DOWNWINDERS
AT RISK, LOUISIANA ENVIRONMENTAL ACTION NETWORK, AND
SIERRA CLUB**

_/s/ Joshua D. Smith_
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St. NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

_Counsel for Sierra Club_


_/s/ Kathleen L. Riley_
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St. NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

_Counsel for Air Alliance Houston,
Downwinders at Risk, Louisiana
Environmental Action Network, and
Sierra Club_

_/s/ Shaun A. Goho_
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

_Counsel for Clean Wisconsin_

Filed: July 5, 2023

NO. 23-60300

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD
COMMISSION OF TEXAS; ASSOCIATION OF ELECTRIC COMPANIES
OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; LUMINANT GENERATION
COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER
COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY,
L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE
COUNTY POWER COMPANY, L.L.C.; STATE OF LOUISIANA;
LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; STATE
OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY; MISSISSIPPI POWER COMPANY,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
MICHAEL S. REGAN, Administrator, United States Environmental
Protection Agency,

*Respondents*.

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1

have an interest in the outcome of this case. These representations are made in

order that the judges of this court may evaluate possible disqualification or recusal.

1. <u>Petitioners</u>: State of Texas; Texas Commission on Environmental Quality; Public Utility Commission of Texas; Railroad Commission of Texas; Luminant Generation Company, LLC; Coleto Creek Power, LLC; Ennis Power Company, LLC; Hays Energy, LLC; Midlothian Energy, LLC; Oak Grove Management Company LLC; Wise County Power Company, LLC; Association of Electric Companies of Texas; BCCA Appeal Group; Texas Chemical Council; Texas Oil & Gas Association; State of Louisiana; Louisiana Department of Environmental Quality; State of Mississippi; Mississippi Department of Environmental Quality; and Mississippi Power Company.

2. <u>Counsel for State of Texas, Texas Commission on Environmental Quality, Public Utility Commission of Texas, and Railroad Commission of Texas</u>: John Scott, Provisional Attorney General; Brent Webster, First Assistant Attorney General; Lanora C. Pettit, Principal Deputy Solicitor General; Bill Davis, Deputy Solicitor General; Michael R. Abrams, Assistant Solicitor General; William F. Cole, Assistant Solicitor General, all with the Office of the Attorney General for the State of Texas.

3. <u>Counsel for Luminant Generation Company LLC, Coleto Creek Power, LLC, Ennis Power Company, LLC, Hays Energy, LLC, Midlothian Energy, LLC, Oak Grove Management Company LLC, and Wise County Power Company, LLC</u>: P. Stephen Gidiere III and Julia B. Barber with Balch & Bingham, LLP; Stephanie Z. Moore, Daniel J. Kelly, and David W. Mitchell with Vistra Corp.

4. <u>Counsel for Association of Electric Companies of Texas, BCCA Appeal Group, Texas Chemical Council, and Texas Oil & Gas Association</u>: Matthew L. Kuryla and Aaron M. Streett with Baker Botts L.L.P.

5. <u>Counsel for State of Louisiana and Louisiana Department of Environmental Quality</u>: Elizabeth B. Murrill, Solicitor General, and Joseph S. St. John, Deputy Solicitor General, with the Louisiana Department of Justice; Courtney J. Burdette,

Executive Counsel, and Jill C. Clark, General Counsel, with the Louisiana Department of Environmental Quality; Jeffrey A. Hall and Marcella Burke with the Burke Law Group.

6. <u>Counsel for State of Mississippi and Mississippi Department of Environmental Quality</u>: Lynn Fitch, Attorney General; Whitney H. Lipscomb, Deputy Attorney General; and Justin Matheny, Deputy Solicitor; all with the State of Mississippi Office of the Attorney General.

7. <u>Counsel for Mississippi Power Company</u>: C. Grady Moore III and Susan Scaggs Stutts with Balch & Bingham, LLP; Shawn S. Shurden, General Counsel, Mississippi Power Company.

8. <u>Respondents</u>: United States Environmental Protection Agency; Michael S. Regan, Administrator, U.S. Environmental Protection Agency.

9. <u>Counsel for Respondents</u>: Merrick Garland, Attorney General; Todd Sunhwae Kim, Assistant Attorney General; and Chloe H. Kolman, Senior Attorney, all with the U.S. Department of Justice; Jeffrey Prieto, General Counsel, U.S Environmental Protection Agency.

10. <u>Proposed Intervenors</u>:

Air Alliance Houston is a nonprofit corporation organized and existing under the laws of the State of Texas, with its headquarters in Houston, Texas. Air Alliance Houston works to reduce air pollution in the Houston region to protect public health and environmental integrity through research, education, and advocacy.

Clean Wisconsin is a nonprofit corporation organized and existing under the laws of the State of Wisconsin, with its headquarters in Madison, Wisconsin. Clean Wisconsin is a membership organization dedicated to environmental education, advocacy, and legal action to protect air quality, water quality, and natural resources in the State of Wisconsin.

Downwinders at Risk is a nonprofit corporation organized and existing under the laws of the State of Texas, with its headquarters located in Dallas, Texas. Downwinders at Risk is a diverse grassroots citizens group dedicated to protecting public health and the environment.

Louisiana Environmental Action Network is a nonprofit corporation based in Louisiana which works with its members and community groups in Louisiana and the Gulf to develop, implement, protect, and enforce legislative and regulatory environmental safeguards. Through education, empowerment, advocacy, and support, Louisiana Environmental Action Network provides tools and services to its members, including individuals and communities facing environmental problems and works to improve the environment for the benefit of all the people of Louisiana.

Sierra Club is a non-profit organization that maintains open membership invitation to organizations, businesses, individuals, and the public in general. Accordingly, Sierra Club consists of many individual members.

Neither Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, Louisiana Environmental Action Network, nor Sierra Club, have any parent companies; and no publicly-held company owns a 10% or greater interest in Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, Louisiana Environmental Action Network or Sierra Club.

11. <u>Counsel for Proposed Intervenors</u>: Joshua Smith and Zachary Fabish with Sierra Club; Kathleen L. Riley and Seth L. Johnson with Earthjustice; Shaun A. Goho with Clean Air Task Force.

Respectfully submitted,

*/s/ Shaun A. Goho*
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

**MOTION FOR LEAVE TO INTERVENE
BY AIR ALLIANCE HOUSTON, CLEAN WISCONSIN, DOWNWINDERS
AT RISK, LOUISIANA ENVIRONMENTAL ACTION NETWORK, AND
SIERRA CLUB**

Pursuant to Federal Rule of Appellate Procedure 15(d) and 5th Cir. R. 15.5,

Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, Louisiana

Environmental Action Network, and Sierra Club (collectively, "Movants") hereby

move for leave to intervene in support of Respondents in the above-captioned

challenge to the "Federal 'Good Neighbor Plan' for the 2015 Ozone National

Ambient Air Quality Standards," 88 Fed. Reg. 36,654 (June 5, 2023) (the "Rule")

and all other petitions for review of the Rule filed in this Court. Respondents take

no position on this motion and Petitioners (except for Mississippi Power Company,

which did not respond to a request for its position) reserve the right to respond

after seeing it.

## INTRODUCTION

Recognizing that air pollution does not stop at state boundaries, the Clean

Air Act's "Good Neighbor" provision requires each state—or, where the state fails,

EPA—to reduce pollution that contributes to unhealthy air quality in other states.

42 U.S.C. § 7410(a)(2)(D)(i)(I). In the Rule, EPA found that pollution from 23

states contributes to violations (or interferes with maintenance) of EPA's health-

based ozone protections in at least 14 states where Movants' members live, work,

and breathe polluted air. Consistent with Supreme Court precedent, *see EPA v.*

*EME Homer City Gen., L.P.*, 572 U.S. 489, 496 (2014), the Rule applies a uniform, cost-effective, and equitable pollution trading framework that requires sources in those 23 states to reduce their contributions to harmful interstate ozone pollution. Despite the Clean Air Act's mandate to "centralize review" of nationally applicable rules in the D.C. Circuit, *Texas v. EPA*, No. 10-60961, 2011 U.S. App. LEXIS 5654, at *13 (5th Cir. Feb. 24, 2011), Petitioners challenged the rule in this Court, seeking to vacate or stay EPA's final rule.

Movants seek to intervene in this action to protect their substantial interests—including the health and welfare of their members—that may be impaired by the disposition of this case. Movants' members live, work, and recreate in areas where EPA has determined that the air is unhealthy to breathe because of pollution from the 23 states at issue. Any court order setting aside or delaying the implementation of the Rule would prolong Movants' members' exposure to levels of ozone pollution that endanger their health and welfare.

Movants also have protectable organizational interests in upholding the Rule. Movants have worked for years to advocate for stronger interstate ozone protections. In this rulemaking, and in many of EPA's prior attempts to address the interstate ozone problem, Movants submitted substantial legal arguments and technical data urging EPA to adopt more stringent pollution reduction requirements. In addition, Movants have repeatedly sued EPA for failing to fulfill

its statutory obligations under the Good Neighbor provision, including its failure to timely finalize the Rule at issue. An order vacating or delaying the Rule would impair Movants' statutory and procedural rights to ensure that the 23 states at issue finally take steps to reduce interstate pollution that harms Movants' members.

No other party adequately represents Movants' interests. First, EPA has an obligation to balance the public's interests in reducing pollution against the interests of regulated entities, including Petitioners, in avoiding the costs associated with pollution reductions. *See John Doe #1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001).

Second, Movants have frequently disagreed with and challenged EPA's Good Neighbor actions—and failures to act—in both rulemaking comments and court proceedings. As discussed in more detail below, EPA has often taken positions that are fundamentally inconsistent with Movants' interests in eliminating or reducing harmful upwind pollution. Based on these significant disagreements, and EPA's narrow interpretation of its Good Neighbor duties, EPA "might" not adequately represent Movants' interests, "which is all that the rule requires." *Brumfield v. Dodd*, 749 F.3d 339, 345–46 (5th Cir. 2014). Because Movants' filing is timely and no other party adequately represents their interests, the Court should grant the motion for intervention.

**BACKGROUND**

## I.     Ozone Pollution Harms Public Health and the Environment

Ground-level ozone pollution seriously harms public health and the environment. Ozone, the main component of smog, forms when nitrogen oxides and volatile organic compounds react in the presence of sunlight.[1] When inhaled, ozone can impair breathing, inflame lungs, and cause or exacerbate asthma attacks. Long-term exposure can lead to the onset of new cases of asthma, chronic obstructive pulmonary disease, and a greater risk of metabolic disorders such as diabetes.[2] Exposure to ozone results in missed days of work or school, emergency room visits, hospitalizations, and even deaths.[3] While these harms can occur even in healthy adults, they are more pronounced for vulnerable groups such as young children, people with lung disease, and older people.[4] In addition, people of color are more likely to be exposed to high levels of ozone than white people, and are

---

[1] EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, at ES-2 (2020) [hereinafter "EPA, Ozone ISA"].

[2] American Lung Association, *State of the Air: 2022 Report* 24–25 (2022) (EPA-HQ-OAR-2021-0668-0270).

[3] EPA, *EPA's "Good Neighbor" Plan Cuts Ozone Pollution—Overview Fact Sheet* 4 (Mar. 2023).

[4] American Lung Association, *supra* note 2, at 25.

more likely to suffer from chronic conditions that make them more susceptible to ozone's health impacts.[5] Ozone also harms plants and ecosystems.[6]

## II. The Clean Air Act Requires that EPA Address Cross-State Ozone Pollution

To protect public health, the Clean Air Act requires that EPA establish and periodically review National Ambient Air Quality Standards ("NAAQS" or "standard") for ozone and other criteria air pollutants. 42 U.S.C. § 7409(b), (d)(1). Because pollution is often blown across state lines, Congress also included a "Good Neighbor" provision in the Clean Air Act, which requires that states submit plans to EPA that include "adequate provisions" to prohibit sources in the state from emitting pollution "in amounts which will … contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to" a NAAQS. *Id.* § 7410(a)(2)(D)(i). EPA must determine whether the plans meet the Clean Air Act's requirements. If a state fails to submit a plan or EPA finds a state plan does not satisfy the act, EPA must address the state's Good Neighbor obligations. *Id.* § 7410(c)(1).

Accordingly, EPA has a long history of addressing interstate ozone pollution through its Good Neighbor authority. In 1998, EPA issued a rule known as the

---

[5] *Id.* at 26.

[6] EPA, Ozone ISA, *supra* note 1, at ES-12–ES-15.

"NOx SIP Call," in which it required 22 states and the District of Columbia to amend their state plans to reduce nitrogen oxide emissions to prevent downwind violations of the 1979 one-hour ozone NAAQS.[7] Next, in 2005, EPA promulgated the Clean Air Interstate Rule, which required states to amend their plans to reduce interstate pollution contributing to violations of the 1997 ozone NAAQS, among other requirements.[8] EPA subsequently promulgated federal plans to implement this rule.[9] These rules were followed by the Cross-State Air Pollution Rule

---

[7] Finding of Significant Contribution and Rulemaking for Certain States in the Ozone Transport Assessment Group Region for Purposes of Reducing Regional Transport of Ozone, 63 Fed. Reg. 57,356 (Oct. 27, 1998).

[8] Rule To Reduce Interstate Transport of Fine Particulate Matter and Ozone (Clean Air Interstate Rule); Revisions to Acid Rain Program; Revisions to the NOx SIP Call, 70 Fed. Reg. 25,162 (May 12, 2005).

[9] Rulemaking on Section 126 Petition From North Carolina To Reduce Interstate Transport of Fine Particulate Matter and Ozone; Federal Implementation Plans To Reduce Interstate Transport of Fine Particulate Matter and Ozone; Revisions to the Clean Air Interstate Rule; Revisions to the Acid Rain Program, 71 Fed. Reg. 25,328 (Apr. 28, 2006).

("CSAPR") in 2011,[10] the CSAPR Update in 2016,[11] the CSAPR Close-Out in 2018,[12] and the Revised CSAPR Update in 2021.[13]

The Rule challenged here is EPA's most recent implementation of its duties under the Good Neighbor provision. It addresses 23 states' interstate transport obligations under the 2015 NAAQS for ozone by setting limits on nitrogen oxide pollution emitted from certain sources in those states during the ozone season, incorporating an interstate allowance trading system for some of those sources. 88 Fed. Reg. at 36,656-57. The Rule requires that 22 of 23 states reduce emissions of nitrogen oxides from fossil fuel-fired power plants, and that 20 of 23 states reduce such emissions from certain categories of industrial stationary sources. *Id.* at 36,656. The emissions from those 23 states significantly contribute to violations of the ozone standard or interfere with maintenance of the standard in at least 14

---

[10] Federal Implementation Plans: Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals, 76 Fed. Reg. 48,208 (Aug. 8, 2011).

[11] Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 81 Fed. Reg. 74,504 (Oct. 26, 2016).

[12] Determination Regarding Good Neighbor Obligations for the 2008 Ozone National Ambient Air Quality Standard, 83 Fed. Reg. 65,878 (Dec. 21, 2018).

[13] Revised Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 86 Fed. Reg. 23,054 (Apr. 30, 2021).

states—Arizona, California, Colorado, Connecticut, Illinois, Indiana, Michigan, Nevada, New Mexico, New York, Ohio, Texas, Utah, and Wisconsin.[14]

By reducing ozone and other harmful pollution—in both upwind and downwind states—the challenged rule will benefit public health and the environment. According to EPA estimates, starting in 2026, the regulation will decrease asthma symptoms for millions of Americans, help keep hundreds of thousands of children and adults from missing school or work, reduce thousands of hospital and emergency room visits, and prevent up to 1,300 premature deaths—each year.[15]

## III. Movants Have Long Advocated for Strong Limits on Cross-State Ozone Pollution

Movants have worked for years to advocate for stronger interstate ozone protections. This work has included engagement in the administrative and judicial proceedings surrounding EPA's prior cross-state regulations for ozone, including in proceedings that resulted in the challenged Good Neighbor Rule. In many cases,

---

[14] EPA, Regulatory Impact Analysis for the Final Federal Good Neighbor Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard 119-121 (Mar. 2023) (tabulating impacts of the Rule on nonattainment, maintenance-only, and violating-monitor receptors in these 14 states).

[15] EPA, EPA's "Good Neighbor" Plan Cuts Ozone Pollution—Overview Fact Sheet 4 (Mar. 2023), https://www.epa.gov/system/files/documents/2023-03/Final%20Good%20Neighbor%20Rule%20Fact%20Sheet_0.pdf.

Movants submitted comments that were highly critical of EPA's proposed rules. In addition, Movants have repeatedly sued EPA over the agency's failure to fulfill its Good Neighbor duties.

*The Original CSAPR*: One of the Movants—Sierra Club—participated as an intervenor in the litigation regarding the CSAPR. *See* Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (and consolidated cases) (D.C. Cir. Oct. 12, 2011).

*The CSAPR Update*: One of the Movants—Sierra Club—challenged the EPA's subsequent "update" rule issued in 2016 and was granted leave to intervene in other challenges to the rule. Order, *Wisconsin v. EPA*, No. 16-1406 (and consolidated cases) (D.C. Cir. Jan. 31, 2017). Partially granting Sierra Club's petition, the D.C. Circuit remanded the rule without vacating it. *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019).

*The CSAPR Close-Out*: Three of the Movants—Clean Wisconsin, Downwinders at Risk, and Sierra Club—challenged the next rule issued by EPA in 2018, which claimed to "close-out" EPA's obligations under the 2008 ozone standard. Brief of Citizen Petitioners, *New York v. EPA*, No. 19-1019 (and consolidated cases) (D.C. Cir. Apr. 19, 2019). The D.C. Circuit remanded and vacated the "close-out" rule. *New York v. EPA*, 781 F. App'x 4 (D.C. Cir. 2019).

*The Revised CSAPR Update*: Following the D.C. Circuit's decisions in *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019), and *New York v. EPA*, 964 F.3d 1214 (D.C. Cir. 2020), three of the Movants—Clean Wisconsin, Downwinders at Risk, and Sierra Club—brought a deadline suit to compel EPA to issue a new interstate ozone plan, as required by the Clean Air Act. Complaint, *Downwinders at Risk et al.*, No. 1:20-cv-00349 (D.D.C. Feb. 7, 2020). As a result of this lawsuit and another by a group of affected states, *New Jersey v. EPA*, 475 F. Supp. 3d 308 (S.D.N.Y. 2020), EPA promulgated the Revised CSAPR Update rule.

When the Revised CSAPR Update was challenged in the D.C. Circuit, three of the Movants—Clean Wisconsin, Downwinders at Risk, and Sierra Club—were granted leave to intervene to defend the rule. Brief of Respondent-Intervenors, *Midwest Ozone Group v. EPA*, No. 21-1146 (D.C. Cir. Feb. 25, 2022). The D.C. Circuit upheld that rule earlier this year. *Midwest Ozone Group v. EPA*, 61 F.4th 187 (D.C. Cir. 2023).

*The Good Neighbor Rule*: Four of the Movants—Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, and Sierra Club—brought a deadline suit to compel EPA to approve or disapprove 32 state cross-state ozone plans, Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021), and all but Clean Wisconsin brought a separate deadline suit to compel EPA to take action to address cross-state ozone pollution from four

states that failed to submit plans, Complaint, *Sierra Club, et al. v. Regan*, No. 3:22-cv-01992-JD (N.D. Cal. Mar. 29, 2022). All of the Movants filed comments on EPA's proposed Good Neighbor Rule, urging EPA to adopt stricter emissions limits and expand the Rule to cover more sources and additional states.[16] Now, Movants seek leave to intervene to defend the Rule challenged here.

## ARGUMENT

Movants respectfully request leave to intervene in defense of the Rule. As organizations committed to protecting public health and the environment and promoting environmental justice, Movants have significant interests in ensuring that the Rule's air quality protections are upheld and fully implemented, including in shielding their members from the substantial public health, economic, and environmental harms of ozone pollution.

## I.  Movants Satisfy the Standard for Intervention

Under Federal Rule of Appellate Procedure 15(d) and Fifth Circuit Local Rule 15.5, a motion to intervene need only be filed "promptly … but not later than 14 days prior to the due date of the brief of the party supported by the intervenor" and provide "a concise statement of the interest of the moving party and the

---

[16] Earthjustice et al., Comment Letter on Proposed Federal Implementation Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard (June 21, 2022), https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0668-0758.

grounds for intervention." Fed. R. App. P. 15(d); 5th Cir. R. 15.5. In determining what constitute appropriate grounds for intervention, this Circuit has identified "the policies underlying intervention in the trial courts pursuant to Fed. R. Civ. P. 24" as a relevant consideration in resolving intervention questions. *Texas v. United States Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985).

Under Federal Rule of Civil Procedure 24(a)(2), a movant is entitled to intervention as-of-right whenever (1) its motion is "timely;" (2) the movant claims an "interest relating to the … subject of the action;" (3) disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest;" and (4) the existing parties may not "adequately represent" the movant's interest. Fed. R. Civ. P. 24(a)(2). Movants readily satisfy these standards. In the alternative, they should be granted permissive intervention.

### A.    Movants Timely Filed This Motion

This motion is timely. Movants' motion is filed "promptly" after the Petitioners filed their petitions for review on June 5th, 15th, and 27th, 2023. 5th Cir. R. 15.5; *see also* Fed. R. App. P. 15(d) (motions to be filed within 30 days). Moreover, Movants' motion is filed more than "14 days prior to the due date of the brief of the party supported by the intervenor." 5th Cir. R. 15.5. This motion is therefore timely filed, and Movants' participation will not delay the proceedings or prejudice any party.

**B.    Movants and Their Members Have Significant Interests in the Rule and the Protections It Provides**

As reflected in the attached declarations, Movants and their members have "direct, substantial, and legally protectable" interests in the Rule. *Texas*, 754 F.2d at 552. Each movant works to protect its members' health and welfare against the harms air pollution causes. The Rule will benefit Movants' members' health and welfare interests because it will reduce their exposure to harmful ozone and ozone precursor pollution, both in the states where those precursors are emitted and in the states to which the pollution is transported. Moreover, Movants have invested years in advocating and litigating for strong rules to control interstate ozone pollution.

Movants' members live, work, and recreate in areas of the country with unhealthy levels of smog, which EPA has determined is caused, in part, by sources in Texas, Louisiana, and Mississippi. *See* 88 Fed. Reg. 9,358–60; EPA-HQ-OAR-2021-0663-0070 (showing state-by-state contributions to downwind ozone receptors). The pollution and resulting poor air quality flowing from Petitioner States harms Movants' members health and welfare.[17]

For example, Downwinders at Risk and Sierra Club member Misti O'Quinn lives near Dallas, Texas with her family. O'Quinn Decl. ¶ 3. Two of her children

---

[17] *See* Hadayia Decl. ¶ 9; Kelly Dec. ¶¶ 8–10; Levenshus Decl. ¶¶ 5–6.

have severe asthma, which is exacerbated by air pollution. *Id.* ¶¶ 9, 12. Her 9-year-old son often has to stay home from school due to his asthma, and has been hospitalized twice with pneumonia. *Id.* ¶ 12. They avoid spending time outdoors on high ozone days, and the doctor visits and medications they need are expensive. *Id.* ¶¶ 5, 13, 16. Movants have other members in Petitioner States who are similarly harmed by emissions in those states.[18]

In addition, the poor air quality resulting from emissions in Petitioner States harms other of Movants' members and their families—several of whom have asthma—who live, work, and recreate in several downwind states. Movants' members in these states are, for example, forced to stay indoors and avoid engaging in outdoor activities like gardening, going to the farmer's market, hiking, biking, and sightseeing on poor air quality days.[19]

A successful challenge to the Rule would also undermine the years of work the Movants have invested in advocating for protective ozone rules. As described above, *see supra* pp. 8–11, Movants have commented on, and litigated over, the Good Neighbor Rule and its predecessors for over a decade. Movants have

---

[18] *See, e.g.*, Hadayia ¶¶ 2–6; Hampton Decl. ¶¶ 2–4; Mannchen Decl. ¶¶ 2–4.

[19] *See* Lewis Decl. ¶¶ 2–7; Owen Decl. ¶¶ 2–5; Retana Decl. ¶¶ 8–12; Reyes Decl. ¶¶ 3–10; Stoll Decl. ¶¶ 4–8; Willey Decl. ¶¶ 2–12.

repeatedly sued EPA for failing to fulfill its statutory obligations under the Good Neighbor provision, including its failure to timely finalize the rule at issue here.

These interests satisfy the Rule 24(a)(2) requirement that a movant claims an "interest relating to the … subject of the action." *See Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (holding that "breathing and smelling polluted air" suffices to demonstrate injury-in-fact); *see also Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 317–18 (D.C. Cir. 2015) (finding a protectable interest supporting intervention where a party would benefit from agency action). Indeed, the D.C. Circuit has repeatedly granted leave for Movants to intervene in prior litigation regarding Good Neighbor regulation of interstate ozone. *See, e.g.*, Order, *EME Homer City Generation L.P. v. EPA*, No. 11-1302 (and consolidated cases) (D.C. Cir. Oct. 12, 2011); Order, *Wisconsin v. EPA*, No. 16-1406 (and consolidated cases) (D.C. Cir. Jan. 31, 2017); Order, *Midwest Ozone Group v. EPA*, No. 21-1146 (D.C. Cir. Aug. 13, 2021).

### C. Movants' Interests May Be Threatened by a Ruling that Would Delay or Weaken the Rule's Air-quality Protections

Unless Movants are permitted to intervene in defense of the Rule, this case "*may* as a practical matter impair or impede [their] ability to protect the[ir] interest[s]." Fed. R. Civ. P. 24(a)(2) (emphasis added). An order delaying, weakening, or undoing the Rule would harm both types of interests described in

the previous section. First, Movants' members' health and welfare will be harmed if Petitioners succeed in their efforts to delay, weaken, or overturn the emission reductions required by the Rule.[20] Second, a successful challenge would undermine the years of work the Movants have invested in advocating for protective ozone rules, including the Good Neighbor Rule. Thus, the disposition of this case "may as a practical matter impair or impede" Movants' ability to protect those interests. Fed. R. Civ. P. 24(a)(2).

### D. Movants' Interests May Not Be Adequately Represented by EPA, Which Has Long Resisted Its Obligations to Limit Interstate Ozone Pollution

Finally, Movants' interests may not be adequately represented by EPA. Under Rule 24, a "movant need not show that the representation by existing parties will be, for certain, inadequate." *Brumfield*, 749 F.3d at 345. Rather, "[b]ecause intervention necessarily occurs before the litigation has been resolved, [a movant] need only show that 'the representation may be inadequate.'" *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (quoting *Texas*, 805 F.3d at 662). The required showing is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *accord John Doe #1*, 256 F.3d at 380. Under this Circuit's caselaw, courts presume that a party adequately

---

[20] *See* Levenshus Decl. ¶¶ 5–6; Kelly Dec. ¶¶ 8–10; Hadayia Decl. ¶ 9.

represents a prospective intervenor's interests when they share the "same ultimate objective," but this presumption may be overcome by showing "adversity of interest, collusion, or nonfeasance." *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015).[21]

Movants satisfy this standard. First, a presumption of adequate representation does not apply to Movants because it is not clear whether they and Respondents share the same ultimate objective. In response to decisions by this Court and others that stayed EPA's state plan disapprovals, EPA has promulgated an interim final rule that temporarily revises the Good Neighbor Rule.[22] EPA states

---

[21] Although this Court has also presumed that representation is adequate when the existing party "is a governmental body or officer charged by law with representing the interests of the intervenor," *Texas*, 805 F.3d at 662, this presumption is inapplicable here, because it "is restricted … to those suits involving matters of sovereign interest" and, "because EPA is a governmental agency and not a sovereign interest, a stronger showing of inadequacy is not required." *Entergy Gulf States La., LLC v. EPA*, 817 F.3d 198, 203 n.2 (5th Cir. 2016).

Moreover, even if this presumption did apply, Movants overcome it for the reasons explained in the main text. A prospective intervenor may overcome this presumption by showing "that its interest is in fact different from that of the governmental entity and that the interest will not be represented by it." *Texas*, 805 F.3d at 662. In practice, this showing is identical to the showing required to establish adversity of interest. *Id.*

[22] Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards; Response to Judicial Stays of SIP Disapproval Action for Certain States (June 29, 2023), http://www.epa.gov/system/files/documents/2023-06/Interim%20final%20rule%20amending%20GNP%20in%20response%20to%20stay%20orders%20-%20prepublication%20version.pdf. This rule has not yet been published in the Federal Register.

in this interim rule that it will take some further action after the courts have reached final determinations on the merits, but that "[a]t the time of this rulemaking, the EPA cannot predict how the Agency's future action may affect the amendments being finalized in this [interim rule]."[23] Given that even EPA does not know what its "ultimate objective" is with regard to Petitioners' federal plan requirements, it is uncertain whether Movants will share it. Therefore, no presumption of adequate representation applies to Movants.

Even if such a presumption did apply, Movants and Respondents have adverse interests. To establish adversity of interest, prospective intervenors may show that their "interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662. This Court has cited the distinction between a government entity's representation of the "broad public interest" and proposed intervenors' narrower interests as one factor in demonstrating adversity of interest. *John Doe #1*, 256 F.3d at 381; *Wal-Mart Stores*, 834 F.3d at 569. Here, Movants promote environmental and public health protections and represent the interests of their members in avoiding harm from the air pollution regulated by the Rule. By contrast, EPA represents the broad public interest, which necessarily includes balancing the impacts of its regulations on

---

[23] *Id.* at 12.

other members of the public, including regulated industries. In similar situations, this Court has repeatedly recognized that a government entity's broader interests support the conclusion that it may not adequately represent a private group's interests. *See John Doe #1*, 256 F.3d at 381 ("The USDA is a governmental agency that must represent the broad public interest, not just the [animal welfare organization's] concerns."); *Brumfield*, 749 F.3d at 346 ("We cannot say for sure that the state's more extensive interests will in fact result in inadequate representation, but surely they might, which is all that the rule requires.").

Second, as described above, Movants have frequently disagreed with and challenged EPA's Good Neighbor actions—and failures to act—in both rulemaking comments and court proceedings. Multiple circuits have found that an agency does not adequately represent a proposed intervenor's interests when that intervenor had previously sued the agency to compel it to take the action under review. *See, e.g.*, *Coal. of Ariz./New Mexico Ctys. for Stable Econ. Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995).

Third, Movants have had longstanding fundamental disagreements with EPA about the Good Neighbor provision. For example, EPA long took the position that it did not need to mandate that upwind states eliminate their significant contributions of pollution to downwind states before those downwind states'

deadlines for achieving the NAAQS. Instead, EPA took the position that it either could set a later deadline (as in CAIR) or that it only needed to "consider" the attainment deadline (as in the CSAPR Update Rule). Movant Sierra Club challenged this interpretation of the Good Neighbor provision and the D.C. Circuit ruled in Sierra Club's favor on this issue. *Wisconsin*, 938 F.3d at 312–20.[24]

These disagreements continued through the rulemaking resulting in the Rule challenged here. For example, Movants (1) objected to EPA's use of cost-effectiveness to apportion emissions reductions to the extent it resulted in undercontrol; (2) argued that EPA was required to apply emissions limits to all engines used in the oil and gas industry, not just those used in transmission; and (3) argued that EPA must set limits for large emissions units other than boilers in five industrial sectors.[25] Based on these significant disagreements, and EPA's narrower interpretation of its Good Neighbor duties in the past, even if the Court "cannot say for sure that [EPA's] more extensive interests will in fact result in inadequate representation, … surely they might, which is all that the rule requires." *Brumfield*,

---

[24] In this case, Sierra Club also disagreed with, and challenged, EPA's (1) assumption about the degree of emissions reductions that would be produced by turning on idled Selective Catalytic Reduction controls at power plants; (2) decision to limit its modeling to include only intrastate generation shifting; and (3) conversion formula for allowances as it moved from one allowance trading program to another. *Wisconsin*, 938 F.3d at 320–21.

[25] *See* Earthjustice et al., Comment Letter, *supra* note 16.

749 F.3d at 345-46. As the D.C. Circuit has previously observed, "doubtful friends may provide dubious representation." *Crossroads Grassroots Policy Strategies*, 788 F.3d at 314).

## II.     In the Alternative, Movants Should Be Granted Permissive Intervention

Rule 24 also grants the district courts discretion to allow "permissive" intervention whenever an applicant "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and the motion to intervene is timely filed so that intervention would not "unduly delay or prejudice the rights of the original parties," *id.* 24(b)(3). This Court has looked to the policies underlying Fed. R. Civ. P. 24(b) when considering motions to intervene under Fed. R. App. P. 15(d). *Texas*, 754 F.2d at 553.

Movants qualify for permissive intervention under this standard. To establish a common claim or defense as a defendant-intervenor in a challenge to agency action, it is sufficient that "movants seek to defend" the agency's decision. *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 14 (D.D.C. 2019) ("That they share this defense in common with the Department is sufficient under Rule 24(b)(1)(B).") (citing *Nuesse v. Camp*, 385 F.2d 694, 704-05 (D.C. Cir. 1967)). Here, Movants intend to offer defensive arguments, all of which will necessarily share questions of law and fact with the underlying challenge and with EPA's defense of the Rule, given that all arguments are likely to be grounded in

the Clean Air Act provisions under which EPA acted and in the administrative record for the Rule. Moreover, as detailed above, Movants have a long history of advocating for interstate-ozone protections, and, because of their focus on their members' public health and environmental justice interests, offer a perspective distinct from EPA's. They therefore respectfully submit that the Court will benefit from their participation. *Cf. Humane Soc'y of United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985) (granting permissive intervention because the proposed intervenor "will contribute a perspective which may not otherwise be represented in this matter").

In addition, Movants' motion is timely. The present case is at a preliminary stage and no briefing schedule has yet been set. Therefore, Movants' intervention will not unduly delay or prejudice any other party's rights.

## CONCLUSION

For more than a decade, Movants have advocated for and litigated over overdue and critically needed protections from interstate ozone pollution. The present challenge threatens both the health and welfare of Movants' members and these organizations' years of work on interstate ozone pollution. This Court should accordingly grant leave for Movants to intervene in support of Respondents in all cases challenging the Rule to defend the essential air-quality protections at issue.

Dated:     July 5, 2023                         Respectfully submitted,

/s/ Joshua D. Smith
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St. NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*

/s/ Kathleen L. Riley
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St. NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Air Alliance Houston,*
*Downwinders at Risk, Louisiana*
*Environmental Action Network, and*
*Sierra Club*

/s/ Shaun A. Goho
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

*Counsel for Clean Wisconsin*

## CERTIFICATE OF CONFERENCE

Pursuant to Fifth Circuit Rule 27.4, counsel for Movants conferred with counsel for the other parties in this case, who represented their positions as follows: Respondents take no position on this motion, while Petitioners (except for Mississippi Power Company, which did not respond to a request for its position) reserve the right to respond after seeing it.

DATED: July 5, 2023

*/s/ Shaun A. Goho*
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion For Leave To Intervene By Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, Louisiana Environmental Action Network, and Sierra Club contains 5,005 words, as counted by counsel's word processing system, and thus complies with the 5,200 word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using **Microsoft Word for Mac Version 16.74** using **size 14 Times New Roman** font.

DATED: July 5, 2023

*/s/ Shaun A. Goho*
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

**CERTIFICATIONS UNDER ECF FILING STANDARDS**

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

DATED: July 5, 2023

*/s/ Shaun A. Goho*
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

**CERTIFICATE OF SERVICE**

On this 5th day of July, 2023, a true and correct copy of the foregoing

Motion For Leave To Intervene By Air Alliance Houston, Clean Wisconsin,

Downwinders at Risk, Louisiana Environmental Action Network, and Sierra Club

was filed with the electronic case filing ("ECF") system of the U.S. Court of

Appeals for the Fifth Circuit, which will provide electronic notice to counsel of

record.

*/s/ Shaun A. Goho*
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us