IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| STATE OF TEXAS, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Case No. 23-60300 |
| | ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## COMBINED RESPONSE TO TEXAS AND MISSISSIPPI PETITIONERS' MOTIONS TO STAY RESPONDENTS' FINAL ACTION, CONFIRM VENUE, AND HOLD CASE IN ABEYANCE

On June 26th, a group of Texas Petitioners filed a motion making three distinct requests: that the Court place these petitions in abeyance pending resolution of predicate litigation; that the Court stay the challenged agency action pending that predicate litigation; and that the Court confirm venue in this litigation. *See* TX Mot., ECF 37-1.  On June 30th, a group of Mississippi Petitioners joined those requests.  *See* MS Mot., ECF 50.  As discussed further below, Respondents EPA and Michael S. Regan, Administrator (collectively, "EPA"), agree with Texas and Mississippi Petitioners ("Movant-Petitioners") that these petitions should be placed in abeyance to preserve the Court's and the parties' resources while this Court resolves an earlier case that will determine whether this case requires

adjudication.  EPA opposes Movant-Petitioners' other two requests, but for the reasons explained below, the Court need not (and should not) address those requests now.

No regional circuit has ever asserted venue over a federal implementation plan issued under the Clean Air Act's "Good Neighbor" provision; rather, those plans have for decades been the subject of exclusive D.C. Circuit review. Consequently, the parties have a significant disagreement as to the proper venue for these challenges.  But as Movant-Petitioners admit, the Court need not address that dispute to place the cases in abeyance, so judicial economy counsels strongly against addressing that issue now, when the need to adjudicate these petitions *in any court* is still uncertain.

The Court also need not issue a stay of Texas or Mississippi's inclusion in the challenged federal "Good Neighbor Plan" pending resolution of litigation in *Texas v. EPA*, Case No. 23-60069 ("*Texas SIP*"), because the Court's orders in the *Texas SIP* case have already effectuated that relief.  Moreover, any possible uncertainty about the scope of that relief has been removed by EPA's issuance of a new Interim Final Rule affirming that Texas and Mississippi are not presently subject to the Good Neighbor Plan and will not be unless and until EPA takes action to address a favorable ruling in the *Texas SIP* case – the same period of time for which Movant-Petitioners are seeking a stay.  As such, the Court need not take

the extraordinary step of issuing a second set of repetitive stay orders against a federal agency and should, at most, confirm that its first round of stay orders was sufficient to forestall Texas and Mississippi's inclusion in the Good Neighbor Plan.

Because EPA consents to the abeyance requested here, and because Movant-Petitioners have no immediate need for resolution of their venue and stay requests (and could raise such matters again as needed when the abeyance lifts), the United States respectfully requests that the Court grant only the portions of Movant-Petitioners' motions requesting abeyance of these petitions pending the outcome of the *Texas SIP* litigation in Case No. 23-60069.

## ARGUMENT

Movant-Petitioners' motions can be resolved simply and without further dispute by: (1) placing these petitions in abeyance pending the outcome of the *Texas SIP* case; (2) deferring consideration of venue, without prejudice, unless and until it is clear that this litigation will move forward; and (3) concluding that a stay order is unnecessary because the Court's May 1, 2023 and June 8, 2023 orders in the *Texas SIP* case already ensure that Texas and Mississippi will not be subject to the Good Neighbor Plan challenged here until the resolution of the *Texas SIP* litigation, *see* Case No. 23-60069, ECF 269-1 (5th Cir. May 1, 2023) ("TX Stay Order"), ECF 359-2 (5th Cir. June 8, 2023) ("MS Stay Order").

1.    To begin, EPA consents to Movant-Petitioners' request for abeyance pending resolution of challenges in the *Texas SIP* case because abeyance in these particular circumstances will preserve judicial economy without further prejudice to EPA or the public.  The petitions here concern EPA's promulgation of the Good Neighbor Plan, a federal implementation plan that satisfies EPA's obligation under the Clean Air Act to reduce certain upwind pollution that is affecting downwind air quality where the upwind states have not made adequate plans to do so.  88 Fed. Reg. 36654 (June 5, 2023).  Under the Clean Air Act's Good Neighbor Provision, 42 U.S.C. § 7410(a)(2)(D)(i)(I), states are obligated to prohibit their emissions of ozone-causing pollution that "contribute significantly" to a downwind state's inability to meet or maintain the Act's air quality standards.  The statute also requires EPA to review states' plans for eliminating those emissions and to disapprove any non-compliant plans.  *Id.* § 7410(k)(3).  Where EPA disapproves a state plan (or no state plan was submitted), EPA must issue a federal plan in those states' place.  *Id.* § 7410(c)(1).  In the context of the Good Neighbor program for ozone pollution, EPA's federal plans have generally addressed outstanding state Good Neighbor obligations in a single coordinated, multi-state trading program that uses market mechanisms to fairly and efficiently distribute emission reductions among upwind states collectively contributing to downwind air quality problems.  *See* 63 Fed. Reg. 57356 (Oct. 27, 1998) (the "$NO_X$ SIP Call"); 70 Fed.

Reg. 25162 (May 12, 2005) (the "Clean Air Interstate Rule"); 76 Fed. Reg. 48208

(Aug. 8, 2011) (the "Cross State Air Pollution Rule" or "CSAPR"); 81 Fed. Reg.

74504 (Oct. 26, 2016) ("CSAPR Update"); 86 Fed. Reg. 23054 (Apr. 30, 2021)

("Revised CSAPR Update").

The scope of EPA's new Good Neighbor Plan – which includes a multi-state

emissions trading program like its predecessors – was thus determined by the

group of 23 states whose state plans were disapproved by EPA (or who failed to

submit complete plans) and for whom EPA was then obligated to implement the

Good Neighbor Provision directly.  At the time the Good Neighbor Plan was

finalized, that list included Texas and Mississippi.  But a state is only subject to a

federal Good Neighbor implementation plan where EPA's predicate action

disapproving the state's own plan (or finding that the state failed to submit a plan)

is valid and in effect.  EPA's disapproval of Texas's and Mississippi's state plans

is the subject of pending litigation in this Court – the *Texas SIP* case – and a

motions panel in that case stayed EPA's disapproval as to both states pending

judicial review, which in turn suspended EPA's authority to implement a federal

plan for sources in those states.  *See* TX Stay Order, ECF 269-1 at 13-24; MS Stay

Order, ECF 359-2 at 2; 42 U.S.C. § 7410(c)(1).  In keeping with those orders, EPA

amended the Good Neighbor Plan to exclude Texas and Mississippi.  *See infra*.  So

neither state will be subject to the Good Neighbor Plan unless and until the *Texas SIP* Court lifts its stay.

Because both Texas and Mississippi emission sources will be excluded from the Good Neighbor Plan at least until the conclusion of the *Texas SIP* litigation in this Circuit, EPA consents to Movant-Petitioners' requested abeyance of these petitions until that case is resolved. Challenges to EPA's Good Neighbor implementation plans have typically involved complex, multi-party litigation on a highly technical record and in consideration of numerous D.C. Circuit and Supreme Court precedents concerning proper interpretation of the Good Neighbor Provision. Abeyance under these circumstances would preserve the Court's and the parties' resources until such a time as Texas or Mississippi is actually subject to the Good Neighbor Plan, and would, thereby, avoid needless, complex, and potentially lengthy disputes between the parties on both procedural and merits issues.

2. The same reasoning strongly counsels against ruling on Movant-Petitioners' request that this Court assess the proper venue for these challenges under the Clean Air Act. Movant-Petitioners present no genuine argument why the Court should address this issue now. Indeed, their own motion states that their venue request need not be resolved for the Court to grant abeyance here – which is what all parties ultimately seek. *See* TX Mot. at 12 (citing *Texas v. EPA*, 829 F.3d

405, 418 (5th Cir. 2016)).  The United States has not moved to transfer these petitions or otherwise put the issue in dispute.  *Cf.* TX Mot. at 13 (relying on an order in *Texas v. EPA*, No. 18-60606, which addressed a motion to confirm venue where a present controversy existed regarding the fate of two sets of duplicative petitions filed in the Fifth and D.C. Circuits).  And Movant-Petitioners have not established any prejudice to them if the Court were to defer this issue, since doing so would not prevent the Court from assessing venue when the abeyance lifts and, in any event, all they request is a ruling by the motions panel that would not bind any eventual merits panel.

Nor would deferring the issue of venue tax the parties' or the Court's resources.  Quite the opposite: deferring consideration of venue would avoid activating unnecessarily one of this litigation's central disputes.  The parties have a significant disagreement on where this case should be heard, and one which is distinct from the venue dispute at issue in the state plan litigation.  *See* TX Stay Order, ECF 269-1 at 6-13.  Unlike challenges to EPA's actions on *state* Good Neighbor plans, which have at times been filed in either the D.C. Circuit or the regional circuits (depending on the nature of each action), EPA's *federal* Good Neighbor implementation plans – involving integrated, multi-state federal control

programs – have been reviewed exclusively by the D.C. Circuit.[1]  That court has, in turn, developed decades of precedent governing the design and application of those plans and interpreting the Good Neighbor Provision.[2]  If this case ever proceeds, it should be in that court.

Indeed, no regional circuit has *ever* reviewed EPA's Good Neighbor implementation plans, because, as this Court recently recognized, "'Congress intended the D.C. Circuit to review matters on which national uniformity is desirable' as a means to take advantage of the D.C. Circuit's 'administrative law expertise' and facilitate 'the orderly development of the basic law under the [Clean Air] Act,' and because '[c]entralized review of national issues is preferable to piecemeal review of national issues in the regional circuits, which risks potentially inconsistent results.'"  TX Stay Order, ECF 269-1 at 10 (quoting *Texas v. EPA*,

---

[1] Movant-Petitioners have themselves sought review of past federal Good Neighbor implementation plans exclusively in the D.C. Circuit, including in litigation over the 2012 CSAPR rule and the 2015 CSAPR Update, and as respondent-intervenors in litigation over the 2018 CSAPR Close-Out.  *See* D.C. Cir. Nos. 12-1185, 12-1187, & 12-1196 (petitions for review of CSAPR); D.C. Cir. Nos. 16-1428, 16-1439 & 16-1440 (petitions for review of CSAPR Update).

[2] *See, e.g.*, *Midwest Ozone Grp. v. EPA*, 61 F.4th 187 (D.C. Cir. 2023); *Maryland v. EPA*, 958 F.3d 1185 (D.C. Cir. 2020); *New York v. EPA*, 964 F.3d 1214 (D.C. Cir. 2020); *New York v. EPA*, 781 F. App'x 4 (D.C. Cir. 2019); *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019); *EME Homer City Generation v. EPA*, 795 F.3d 118 (D.C. Cir. 2015); *EME Homer City Generation v. EPA*, 696 F.3d 7 (D.C. Cir. 2012); *North Carolina v. EPA*, 531 F.3d 896 (D.C. Cir. 2008); *Appalachian Power Co. v. EPA*, 249 F.3d 1032 (D.C. Cir. 2001); *Michigan v. EPA*, 213 F.3d 663 (D.C. Cir. 2000).

2011 WL 710598, at *3 (5th Cir. 2011), and contrasting venue in state plan
disapprovals to venue in implementation plan-related actions that "uniformly apply
to a broad swath of States"); *see also Texas v. EPA*, 829 F.3d 405, 421 n.24 (5th
Cir. 2016) (explaining that EPA's "determination that a national standard satisfies
a particular requirement in each state" would satisfy the Clean Air Act's test for
exclusive D.C. Circuit review of local or regional actions that nonetheless have
nationwide scope or effect).  On the rare occasion when a party has sought review
of EPA's Good Neighbor implementation plans in the regional circuits, that
petition has been transferred to the D.C. Circuit.  *See, e.g.*, Judgment, *Cedar Falls
Utilities v. EPA*, No. 16-4504, ECF 4503949 (8th Cir. Feb. 22, 2017); *W. Va.
Chamber of Com. v. Browner,* No. 98-1013, 1998 WL 827315, at *6-8 (4th Cir.
Dec. 1, 1998).

     Because the venue issue here is distinct from that for state plan disapprovals,
this Court could not simply rely on the venue analysis performed by the motions
panel in the *Texas SIP* case.  Uniform, centralized review in the D.C. Circuit is
required in the context of EPA's Good Neighbor implementation plans in light of
the particular design and operation of those federal plans – which render them
"nationally applicable" or, at a minimum, locally or regionally applicable but
"based on a determination of nationwide scope or effect" made and published by
EPA.  42 U.S.C. § 7607(b)(1); *see* 88 Fed. Reg. at 36860.  In EPA's federal plans,

both the methodology to identify necessary emission reductions and the

implementation of those reductions rely on nationally consistent, rather than state-

specific, determinations.  As a result, sources covered by those plans have

standardized emissions control requirements that apply uniformly across types of

sources, regardless of where they are located – a regulatory structure that would be

directly threatened by disparate review in the regional circuits.

For example, EPA determines which emissions from power plants contribute

significantly to downwind air quality problems – and so must be eliminated under

the Act – using a uniform contribution threshold (which identifies states

contributing more than one percent of the acceptable pollution limit in a downwind

area) and a uniform cost methodology (which identifies "significant" emissions by

assessing the emission reduction potential available at different technological cost

thresholds held constant across all subject power plants, independent of their home

state's relative responsibility for downwind air quality problems).  88 Fed. Reg. at

36654, 36659.  Those reductions are then implemented through an interstate,

market-based trading program that allows covered sources to buy and sell

emissions allowances with sources in all other states.  *Id.* at 36654, 36904-18.[3]

---

[3] Those nationally uniform approaches to implementing the Good Neighbor
Provision's statutory mandate were described by the Supreme Court as "treat[ing]
all regulated upwind States alike" and were upheld as an "efficient and equitable"
means by which EPA could allocate responsibility for Good Neighbor emission

For other industrial sources, EPA's Good Neighbor Plan likewise implements the necessary emission reductions through standardized requirements that apply uniformly to each covered type of emissions source, irrespective of their geography. 88 Fed. Reg. at 36869-89. The legal and technical questions presented by these and other elements of EPA's federal Good Neighbor implementation plans are thus distinct from those this Court addressed in the *Texas SIP* case. *Cf.* TX Stay Order, ECF 269-1 at 11-12.

Whether a federal program applying uniform requirements for emissions sources in nearly half the country could be reviewed in a regional circuit under the terms of the Clean Air Act's venue provision, 42 U.S.C. § 7607(b)(1), is a question that no regional circuit has decided in the affirmative and, in any case, need not be resolved now. The parties agree that this litigation should not proceed until after the Court's ruling on EPA's state plan disapproval action, at which time – if petitioners do not prevail – the parties will have ample opportunity to address any procedural or dispositive issues that require resolution, including venue, either in or before merits briefing. Deciding whether venue is proper in the D.C. Circuit or the regional circuits now, on the other hand, would introduce inefficiency and undue conflict no matter which way this Court rules. A decision on venue may

---

reductions between multiple states in a single, coordinated federal action. *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 505, 519 (2014).

11

prompt requests for reconsideration or other review, notwithstanding the parties' mutual interest in abeyance.  And if the petitions were transferred, the parties might be required to re-brief the request for abeyance already agreed to here.  The virtue of the unopposed abeyance at this juncture is that it preserves the parties' disputes – and the Court's resources – until such a day as they become necessary.  If Texas and Mississippi ultimately prevail in their state plan challenges, then that day may never come; if EPA prevails, then the venue question will become ripe for decision.  All parties benefit from avoiding needless conflict in the meantime.

Another reason counsels against this Court's consideration of venue at this juncture: the period for filing challenges to the Good Neighbor Plan has not yet run.  *See* 86 Fed. Reg. at 23164 (noting that under 42 U.S.C. § 7607(b), any petitions for review of the Plan must be filed within 60 days of June 5th).  Any parties joining the case will have significant equities in the Court's consideration of venue, and both Respondents and this Court would benefit from addressing venue in a consolidated fashion, not seriatim as petitions are added.  There is reason to believe there may be additional petitions filed in this matter either here or in the D.C. Circuit: five parties to the predicate state plan litigation in this Court have not yet petitioned for review of EPA's Good Neighbor Plan and may yet do so.  *Compare* Docket, Case No. 23-60069, *to* Docket, Case No. 23-60300.

12

To that end, if this Court believes it necessary to address venue now, even absent a compelling need and despite the parties' agreement on abeyance, the United States respectfully requests that the Court dismiss the venue portions of Movant-Petitioners' motions without prejudice and provide for coordinated, consolidated briefing on that question commencing after August 4, 2023, the end of the petition filing period.[4]  Doing so would allow all current and future parties to participate in venue briefing, and would allow for a single Court ruling on the issue rather than an order pertaining only to these Movant-Petitioners.  Addressing venue in a consolidated manner would also be without prejudice to any party, as there is no merits briefing that might otherwise be delayed.  *See* TX Mot. at 12-13.

3.    The Court also should not grant Petitioners' request for a stay, as this Court's stay orders in the *Texas SIP* case already fully enjoin the implementation of any federal plan requirements for Texas and Mississippi while EPA's state plan disapproval remains pending in this Court.[5]  The *Texas SIP* motions panel was

---

[4] In the event the Court does not wish to defer the issue until after the abeyance lifts and also does not intend to allow consolidated venue briefing by all present and future parties, the United States respectfully requests in the alternative that the Court allow supplemental briefing on the matter of venue, which will allow a full treatment of this important issue that is not possible in a 20-page response to a motion with three distinct requests.

[5] As Movant-Petitioners' motions confirm, they are requesting a stay "pending judicial review of the [state plan] disapproval action" in Case No. 23-60069, *not* a stay pending completion of judicial review *in this matter*.  *See* TX Mot. at 9 and note (explaining that the "request here is based solely on EPA's lack of authority to impose a [federal plan] while its [state plan] disapproval is stayed"); MS Mot. at 1

unequivocal that it was granting a stay to ensure that Texas and Mississippi sources

would not have to "commence[] compliance efforts" under EPA's Good Neighbor

Plan. *See* TX Stay Order, ECF 269-1 at 22; MS Stay Order, ECF 359-2 (granting

stay for the reasons outlined in the TX Stay Order). The Court understood that by

staying the state plan disapproval as to these states, it fully enjoined EPA's

authority to impose federal plan requirements on pollution sources in Texas and

Mississippi. *See* ECF 269-1 at 22-24; TX Mot. at 7. As a consequence, those

orders already foreclose the purported irreparable harms Movant-Petitioners cited

in the *Texas SIP* matter and merely repeat here. *See* TX Mot. at 8-9 (citing their

*Texas SIP* stay order to allege irreparable harm), 10-11 (repeating their claim in the

*Texas SIP* case that a stay is needed to prevent compliance requirements from

taking effect under the Good Neighbor Plan); MS Mot. at 3-4 (same). A second

---

(stating that they request "the same relief" as Texas Petitioners). EPA's consent to abeyance is premised on that understanding. To that end, Texas Petitioners have reserved their right to seek a further stay of the Good Neighbor Plan on its own facts and merits in the event EPA's state plan disapproval is upheld and this litigation is revived, TX Mot. at 9 and note, and the United States hereby reserves its rights to dispute the necessity of any stay of the Good Neighbor Plan pending the resolution of merits litigation here. In any case, a stay pending resolution of *this* litigation would be improper because Movant-Petitioners' request does not depend on "any legal shortcomings in the [Good Neighbor Plan] itself," as distinct from the predicate state plan Disapproval Action, and so has not demonstrated any likelihood of success on the merits of Petitioners' challenges to the Good Neighbor Plan. *See* TX Mot. at 7-8.

round of stay orders in this case purporting to close any gap in the remedy provided by the *Texas SIP* panel is thus unnecessary because no such gap exists.

Movant-Petitioners have not pointed out any defect in the operation of the Court's stay orders in the *Texas SIP* case, nor have they raised in that litigation any concern that the Court's stay orders were insufficient to forestall the irreparable harms alleged there – even as they claim here that those same harms persist and require redress. They rely instead on supposed uncertainty as to whether EPA will lawfully comply with the *Texas SIP* orders. TX Mot. at 9-12; MS Mot. at 3. Such purported uncertainty cannot justify the "extraordinary remedy" of a stay of a duly promulgated federal regulation. *See Belcher v. Birmingham Tr. Nat. Bank*, 395 F.2d 685, 685 (5th Cir. 1968); *All. for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *3 (5th Cir. Apr. 12, 2023) (discussing legal basis for stay pending appeal). "Speculative injury is not sufficient" to establish irreparable harm. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Indeed, "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)).

Movant-Petitioners' stated concern that the United States plans to ignore this Court's existing stay orders is not only speculative and unsupported (and at odds with the "presumption of regularity" afforded actions of the Executive Branch,

*U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001)), it has been disproven by EPA's subsequent actions, described below.

To be clear, EPA's objection to Movant-Petitioners' stay request is not an effort to revive compliance obligations under the Good Neighbor Plan during the pendency of the state plan litigation (and abeyance of this case). By virtue of this Court's stay orders in the *Texas SIP* case, the Good Neighbor Plan will not become effective as to either Texas or Mississippi on August 4th, as it will for other states. EPA's actions have not indicated otherwise. EPA publicly confirmed its plan for complying with the stay orders in a memorandum from the head of its Office of Air and Radiation on June 1, 2023, explaining that EPA would take a final action before the Good Neighbor Plan's effective date to ensure that the Plan's requirements would not take effect as to Texas or Mississippi.[6] EPA affirmed the same before the Court in other motions in the *Texas SIP* case. *See* TX Mot. at 9-10; MS Mot. at 3. And EPA briefed Texas Petitioners' counsel on EPA's then-forthcoming regulatory action to codify the effect of the stay orders at their request. Movant-Petitioners' refusal to accept these assurances about their (lack

---

[6] Principal Deputy Assistant Administrator Joseph Goffman, Office of Air and Radiation, Notice of Forthcoming EPA Action to Address Judicial Stay Orders (June 1, 2023) ("Goffman Memorandum"), available at: https://www.epa.gov/system/files/documents/2023-06/Goffman%20Memo%20re%20Stay%20Orders_060123%20JG%20%281%29.pdf.

of) obligations under the Good Neighbor Plan after this Court's stay orders does not establish irreparable harm or justify a second round of orders.

But even assuming that some (more than speculative) uncertainty regarding the Court's stay orders existed when Movant-Petitioners filed their motions, no such uncertainty remains. EPA has now fully implemented the stay orders and fulfilled its commitments to the states, the Court, and the public, by signing the Interim Final Rule restoring Texas, Mississippi, and similarly situated states, to the status quo before the Good Neighbor Plan was promulgated. *See* Interim Final Rule, Ex. 1 at 9-12. To do so, EPA amended the regulatory text governing both states' Good Neighbor obligations under this and previous federal plans, *see, e.g.*, *id.* at 12-15, 30-60, ensuring that no part of the Code of Federal Regulations remains that would subject Texas or Mississippi to compliance requirements under the Good Neighbor Plan. That amended text will remain indefinitely – that is, unless and until EPA decides to take further rulemaking action upon the resolution of the *Texas SIP* litigation.

The Interim Final Rule acknowledges that EPA cannot predetermine how it might address Good Neighbor obligations in states like these in the event EPA's federal plan authority for those states is restored, *see id.* at 12 – a reasonable conclusion given EPA's inability to forecast when litigation will conclude or what the resolution might be. But the Rule confirms that any alteration to the reinstated

17

status quo will require "further action" by EPA consistent with the outcome of the

*Texas SIP* litigation. *Id.* at 11-12. So states like Texas and Mississippi will not

become subject to the Good Neighbor Plan again, or any other federal Good

Neighbor requirements for the 2015 ozone standard, without affirmative

rulemaking action on EPA's part – after the *Texas SIP* litigation concludes – to

reassess obligations, reset applicable timeframes, or both. The affirmation of the

pre-Plan regulatory status quo thus obviates Movant-Petitioners' concern that they

might yet be subject to compliance obligations arising from the Good Neighbor

Plan during the pendency of the *Texas SIP* litigation; those obligations no longer

apply, so no additional judicial intervention is warranted. *See* TX Mot. at. 10-11;

MS Mot. at 3.[7]

---

[7] Texas Petitioners' insinuation that the publication of the Good Neighbor Plan after the Court's stay order contravened that order, TX Mot. at 2, is irrelevant in light of the issuance of the Interim Final Rule. But in any case, Petitioners misunderstand the publication process. The final Good Neighbor Plan, including provisions applicable to Texas, was signed and made available to the public on March 15, 2023, long before the Court's stay order. *See, e.g.*, https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs. Upon signature, the final rule was sent to the Office of the Federal Register for processing and publication, a process that can be lengthy for large rules. The Plan was, incidentally, published after the Court's intervening stay order. To avoid any confusion as a result, EPA issued the Goffman Memorandum shortly before publication of the Good Neighbor Plan clarifying that its requirements would not come into force for any state for which a judicial stay of the underlying state plan had been issued – including Texas. *See* Goffman Memorandum at 1. Texas Petitioners are thus incorrect to suggest that EPA has, at any time, indicated that the Good Neighbor Plan would require Texas's compliance notwithstanding the Court's stay order.

Nor can Petitioners reasonably claim they now face irreparable harm from the possibility that a party might challenge EPA's Interim Final Rule. As explained above, Movant-Petitioners are fully and independently protected by this Court's stay orders, which would make it unlawful for EPA to require Texas or Mississippi sources' compliance with the Good Neighbor Plan while the *Texas SIP* litigation remains unresolved. And in any case, the possibility of harm from a third-party challenge to the Interim Final Rule is entirely speculative – depending not only on the presumption that parties will be interested in bringing such a challenge but on the speculation that those parties will, in fact, prevail in such a challenge. There is no reason to believe such a challenge could succeed where EPA's administrative action effectuates judicial orders and not discretionary agency policy. *Cf.* TX Mot. at 11 (citing third-party challenges in *Clean Air Council v. Pruitt* and *Sierra Club v. Jackson* to EPA stay actions where the Agency voluntarily stayed a rule to allow for administrative reconsideration or judicial review, not in response to a judicial stay order); Interim Final Rule, Ex. 1 at 19 ("[T]he EPA has no discretion as to the regulatory revisions that stay the effectiveness of the Good Neighbor Plan's requirements for sources in the states covered by stay orders").[8]

---

[8] Even if the Interim Final Rule were challenged, Movant-Petitioners' potential efforts in fending off those challenges, *see* TX Mot. at 11, cannot justify a stay because they do not constitute "irreparable harm." *Renegotiation Bd. v.*

Because Movant-Petitioners' request for a stay relies on improper speculation, a second set of stay orders restating that Texas and Mississippi have no compliance obligations under the Good Neighbor Plan so long as the disapproval of their state plans is in dispute is improper as a matter of law, and unnecessary and duplicative as a matter of fact. Those orders would have no practical effect – and so, EPA acknowledges, would cause relatively little practical harm. But the federal government, and the public it represents, are necessarily harmed when its lawful actions are effectively enjoined. *Cf. Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."). And more practical harms likewise counsel in favor of forbearance here: A second set of stay orders pending resolution of litigation in Case No. 23-60069 would belabor the administration of these cases by requiring duplicative motions practice in any future management of those orders. And it would signal that this Court's first set of stay orders were inadequate or defective, casting needless doubt on the force of the Court's injunctive relief (and on EPA's compliance therewith) and incentivizing future litigants to seek duplicative stays to shore up stays and

---

*Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

injunctions granted by this Court based only on speculation – in the face of clear evidence to the contrary – that those orders will not be honored.

Because Movant-Petitioners face no imminent harm from the absence of a stay of the Good Neighbor Plan during the pendency of the state plan litigation, they have not carried their "substantial" burden to secure this extraordinary remedy. *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022). The Court should deny this request for a stay or, at most, confirm that its stay orders in the *Texas SIP* litigation were sufficient to address Movant-Petitioners' requested relief.

## CONCLUSION

For these reasons, the United States consents to Movant-Petitioners' request that their petitions be placed in abeyance, but respectfully requests that the Court defer or deny the motions to confirm venue and for a stay of the Good Neighbor Plan pending resolution of *Texas v. EPA*, Case No. 23-60069, so that those requests can be considered only as necessary if and when this litigation is revived.


DATED:  July 10, 2023             Respectfully submitted,

                                  TODD KIM
                                  Assistant Attorney General

                                  */s/ Chloe H. Kolman*
                                  CHLOE H. KOLMAN
                                  ELISABETH H. CARTER
                                  U.S. Department of Justice

Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 514-9277
chloe.kolman@usdoj.gov

*Of Counsel*:

Daniel Schramm
Jeanhee Hong
Hali Kerr
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

*Counsel for Respondents*

**CERTIFICATION FOR ECF PLEADING
AND OF COMPLIANCE WITH TYPEFACE AND TYPE-VOLUME
REQUIREMENT**

Pursuant to ECF Filing Standards Section A(6), I hereby certify that all required privacy redactions have been made; that no hard copies are required to be submitted to the clerk's office so Section A(6)(2) is not relevant; and that the ECF submission was scanned for viruses with Microsoft's Forefront Client Security, which is updated daily, and, according to the program, is free of viruses.

This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type-style requirements of Fed. R. App. P. 32(a)(6), and the type-volume requirements of Fed. R. App. P. 27(d)(2)(A) because this document was prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point Times New Roman font, and has a total word count of 5,166 words.

DATED:   July 10, 2023                      */s/ Chloe H. Kolman*
                                            CHLOE H. KOLMAN

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I electronically filed the foregoing RESPONSE with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN