NO. 23-60300

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL
QUALITY; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD
COMMISSION OF TEXAS; ASSOCIATION OF ELECTRIC COMPANIES
OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL;
TEXAS OIL & GAS ASSOCIATION; LUMINANT GENERATION
COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER
COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY,
L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE
COUNTY POWER COMPANY, L.L.C.; STATE OF LOUISIANA;
LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; STATE
OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL
QUALITY, MISSISSIPPI POWER COMPANY,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
MICHAEL S. REGAN, Administrator, United States Environmental
Protection Agency,

*Respondents*.

**ENVIRONMENTAL INTERVENORS' RESPONSE IN OPPOSITION TO
PETITIONERS' MOTIONS TO STAY, CONFIRM VENUE, AND HOLD
THE CASE IN ABEYANCE**

/s/ Joshua D. Smith
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*


/s/ Kathleen L. Riley
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St. NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Air Alliance Houston,
Downwinders at Risk, Louisiana
Environmental Action Network, and
Sierra Club*

/s/ Shaun A. Goho
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

*Counsel for Clean Wisconsin*

Filed: July 10, 2023

Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, Louisiana Environmental Action Network, and Sierra Club (collectively, "Environmental Intervenors") file this response in opposition to the motions of Texas Petitioners and Mississippi Petitioners seeking to stay EPA's final action *Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards*, 88 Fed. Reg. 36,654 (June 5, 2023) (the "Good Neighbor Rule"), confirm venue in this Court for their challenges to the Good Neighbor Rule, and hold these proceedings in abeyance. For reasons explained more fully below, this Court should deny Texas and Mississippi Petitioners' motions for a stay, as movants already have the relief they seek and have not carried their burden for further relief, and either grant an abeyance without reaching venue or deny their motions to confirm venue, because an abeyance would conserve judicial resources and because venue is improper in this Court.

## INTRODUCTION

Millions of people across this country are subjected to unsafe and unhealthy levels of ground-level ozone, or smog, pollution.[1] Ground-level ozone is a corrosive air pollutant that inflames the lungs, constricts breathing, and likely kills

---

[1] *See, e.g.*, U.S. EPA, 8-Hour Ozone (2015) Nonattainment Areas by State/County/Area, *at* https://www3.epa.gov/airquality/greenbook/jncty.html.

people.[2] Ozone causes and exacerbates asthma attacks, emergency room visits, hospitalizations, and other serious health harms.[3] Ozone-induced health problems can force people to change their ordinary activities, requiring children to stay indoors and forcing people to take medication and miss work or school.[4]

Ground-level ozone is not emitted directly by polluters, but is instead created when precursor pollutants such as nitrogen oxides ("NOx") and volatile organic compounds mix in the presence of sunlight. 88 Fed. Reg. at 36,669. As a result, much of the ozone afflicting people in one location is in fact caused by NOx emitted by polluters many hundreds of miles away. 88 Fed. Reg. at 36,670 ("Studies have established that ozone formation, atmospheric residence, and transport occur on a regional scale (i.e., thousands of kilometers) over much of the U.S."). As a result, downwind areas may fail to meet Clean Air Act deadlines to attain an ozone National Ambient Air Quality Standard ("NAAQS"), *see* 42 U.S.C.

---

[2] *See* 80 Fed. Reg. 65,292, 65,308 (Oct. 26, 2015); EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, at 2-20 to -24, tbl.2-2 (Feb. 2013) (EPA-HQ-OAR-2008-0699-0405) ("Science Assessment").

[3] *See, e.g.*, EPA, Policy Assessment for the Review of the Ozone National Ambient Air Quality Standards, at 3-18, 3-26 to -29, 3-32 to - 35 (Aug. 2014) (EPA-HQ-OAR-2008-0699-0404) ("Policy Assessment"); Science Assessment at 2-16 to -18, 2-20 to -24, tbl.2-2.

[4] *See, e.g.*, Policy Assessment at 4-12.

§ 7511(a), (b)(1), unless upwind areas contributing pollution to those nonattainment areas reduce their emissions.

In 2015, EPA finalized a health-based NAAQS for ground-level ozone of 70 parts per billion. 80 Fed. Reg. 65,292 (Oct. 26, 2015). This triggered a requirement for states to adopt and submit State Implementation Plans ("SIPs") to EPA that, among other things, contained "adequate provisions" to "prohibit[] … any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will contribute significantly to nonattainment in, or interfere with maintenance by, any other State"—the so-called "Good Neighbor Provision." 42 U.S.C. § 7410(a)(1), 7410(a)(2)(D)(i)(I).

Once EPA receives a SIP, it is obligated to approve or disapprove the SIP based on whether "it meets all of the applicable requirements" of the Clean Air Act, including the Good Neighbor requirement. *Id.* § 7410(k)(3). Many (although not all) states submitted SIPs concerning the Good Neighbor requirement, and in February of this year, EPA issued a single rule disapproving (in whole or in part) 21 SIPs, including those of Texas and Mississippi. 88 Fed. Reg. 9,336.[5] EPA found

---

[5] Although Texas Petitioners complain, TX Mot. at 5, that EPA was late in disapproving Texas's SIP, it was some of Environmental Intervenors (Air Alliance Houston, Clean Wisconsin, Downwinders at Risk, and Sierra Club)—and not Texas—who brought litigation against EPA to force it to meet its deadline to approve or disapprove the states' Good Neighbor SIPs (including that of Texas). *See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR

that Texas contributed to unsafe ozone levels across state lines at 20 different locations; Mississippi's pollution contributed to 11 unsafe ozone areas in downwind states (including to the ozone nonattainment area in Galveston County, Texas); and both SIPs—like all the SIPs EPA disapproved— "included *no permanent and enforceable emissions controls*," 88 Fed. Reg. at 9,357-78, 9,359-60 (emphasis added).

Having disapproved the inadequate, do-nothing SIPs, EPA was obligated under the Clean Air Act to issue a federal rule implementing the Good Neighbor provision for those states, and for other states that failed to submit a SIP at all. 42 U.S.C. § 7410(c)(1). Because the Clean Air Act requires that state Good Neighbor obligations be satisfied in time for downwind state NAAQS attainment deadlines, such a federal rule must address upwind state contributions to downwind state attainment issues by the 2023 ozone season. *See Wisconsin v. EPA*, 938 F.3d 303, 315, 318 (D.C. Cir. 2019) ("the Good Neighbor Provision calls for elimination of upwind States' significant contributions on par with the relevant downwind attainment deadlines") (EPA must issue a federal plan in time to meet downwind attainment deadlines "even if the outer limit of the statutory timeframe gives EPA

---

(N.D. Cal. May 12, 2021). Environmental Intervenors did so because EPA's inaction threatened their members' health and welfare by delaying necessary interstate pollution reductions.

more time to formulate the [federal plan]"); 42 U.S.C. § 7511(a), (b)(1) (setting

attainment deadlines of 6 and 9 years from designation for moderate and serious

nonattainment areas, respectively); 83 Fed. Reg. 25,776 (June 4, 2018)

(designating most areas nonattainment under the 2015 ozone NAAQS with an

effective date of August 3, 2018); 88 Fed. Reg. at 36,657 (emissions reductions to

occur before attainment dates); *see also Maryland v. EPA*, 958 F.3d 1185, 1203-04

(D.C. Cir. 2020).

On March 15, 2023, EPA Administrator Michael S. Regan signed the Good

Neighbor Rule,[6] addressing the unfulfilled Good Neighbor obligations of 23 states

that submitted inadequate SIPs or no SIPs at all, whose emissions contribute to

violations of the ozone NAAQS or interfere with its maintenance in at least 14

downwind states.[7] This Rule functions by setting limits on NOx pollution emitted

from power plants and certain other industrial sources in those states during the

ozone season and establishing an interstate allowance trading system for power

---

[6] *See* U.S. EPA, Good Neighbor Plan for 2105 Ozone NAAQS, Rule Summary ("On March 15, 2023, the U.S. Environmental Protection Agency (EPA) issued its final Good Neighbor Plan"), https://www.epa.gov/csapr/good-neighbor-plan-2015-ozone-naaqs.

[7] EPA, Regulatory Impact Analysis for the Final Federal Good Neighbor Plan Addressing Regional Ozone Transport for the 2015 Ozone National Ambient Air Quality Standard, at 119-121 (Mar. 2023) (tabulating impacts of the Rule on nonattainment, maintenance-only, and violating-monitor receptors in 14 states).

plant sources. 88 Fed. Reg. at 36,656-57. These pollution reductions are projected to result in enormous public health benefits annually: decreasing asthma symptoms for millions of Americans, preventing hundreds of thousands of missed days of school or work, reducing by thousands the number of hospital and emergency room visits, and preventing up to 1,300 premature deaths.[8]

However, by June 8, this Court issued orders staying the SIP Disapproval Rule as to both Texas and Mississippi pending resolution of petitions challenging the Disapproval Rule on the merits. Docs. 269-1, 359-2, *Texas v. EPA* (5th Cir. No. 23-60069). On June 1 (before the Good Neighbor Rule's June 5 Federal Register publication), EPA released a memorandum acknowledging the SIP Disapproval Rule stays—including for Texas—and recognizing that "the Good Neighbor Plan's requirements … will not take effect" while those stays remained in place.[9] Accordingly, on June 29 EPA signed an Interim Final Rule that, among other things, amended the Good Neighbor Rule to remove several states with SIP

---

[8] EPA, EPA's "Good Neighbor" Plan Cuts Ozone Pollution—Overview Fact Sheet, at 4 (Mar. 2023), https://www.epa.gov/system/files/documents/2023-03/Final%20Good%20Neighbor%20Rule%20Fact%20Sheet_0.pdf.

[9] Joseph Goffman Memorandum (June 1, 2023), https://www.epa.gov/system/files/documents/2023-06/Goffman%20Memo%20re%20Stay%20Orders_060123%20JG%20%281%29.pdf.

Disapproval Rule stays, including Texas and Mississippi, from it.[10]  EPA notes that it will take "further action" only after the courts issuing such stays "have reached final determinations on the merits."[11]

As such, the Texas Petitioners and Mississippi Petitioners in their motions (Docs. 37-1, 50) now request that this Court stay a Good Neighbor Rule that EPA has determined—and taken action to ensure—will not take effect for sources in these states. Movants additionally request this Court confirm venue and abate these proceedings. Petitioners' motions should be denied or not ruled on: this Court should deny the requests to stay the already-stayed portions of the Good Neighbor Rule and either hold this case in abeyance without ruling on the motion to confirm venue or deny the motion to confirm venue.

## ARGUMENT

### I.    A Stay Is Unwarranted.

To win a stay, Movants must demonstrate they satisfy the familiar four-factor test: (1) a strong likelihood of success on the merits, (2) irreparable harm

---

[10] EPA, Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards; Response to Judicial Stays of SIP Disapproval Action for Certain States; Interim Final Rule, at 11-12 (June 29, 2023) ("Interim Final Rule"), https://www.epa.gov/system/files/documents/2023-06/Interim%20final%20rule%20amending%20GNP%20in%20response%20to%20stay%20orders%20-%20prepublication%20version.pdf.

[11] *Id.*

absent a stay, (3) that the balance of equities favors a stay, and (4) that the public interest weighs in favor of a stay. *See Nken v. Holder*, 556 U.S. 418, 433 (2009). In particular, the irreparable harm claimed must be "both certain and great," *i.e.*, "actual and not theoretical," *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), not "speculative," *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022). Here, Texas Petitioners and Mississippi Petitioners have not demonstrated—and indeed, cannot demonstrate—that all four factors are satisfied.

First, movants have failed to show irreparable harm absent a stay. They already have a stay of the SIP Disapproval Rule, which forms the predicate authority of the Good Neighbor Rule. And in the wake of that stay (but after or contemporaneous with the filings of Movants' motions), EPA has issued an Interim Final Rule removing both Texas and Mississippi from the Good Neighbor Rule. Interim Final Rule, *supra* n.10 at 10-11. Even if Movants had explained how the Good Neighbor Rule would cause them irreparable harm (and they have not), the stay they seek here would provide no relief beyond what the SIP Disapproval Rule stay and Interim Final Rule already supply.

Moreover, to the extent movants attempt to identify any harm at all, they merely speculate: that a Rule that does not currently apply to them may, somehow, nonetheless apply to them. Indeed, Texas Petitioners make it very clear that whatever harms they claim are entirely speculative:

- Administrative action "is not *certain* to prevent the irreparable harms";

- "Texas Petitioners *cannot be certain*" that EPA action will be adequate;

- Pausing the Good Neighbor Rule might not "*necessarily* toll future compliance deadlines" that EPA "or others … *may* claim should be met *if* this Court were to ultimately uphold" the SIP Disapproval Rule;

- "The more relief EPA grants, the *more likely*" such rule "is to be challenged in court, *possibly* in a different and improper venue";

- "Only a judicial stay … can eliminate *the risk* of irreparable harm."

TX Mot. at 9-12 (emphasis added); *see also id.* at 11 (Texas Petitioners desire a stay of the Good Neighbor Rule on the theory such a stay would "remove the *uncertainty*" Texas Petitioners perceive from the Rule's publication and/or from "the *undefined* contours" of then-potential "forthcoming EPA action") (emphasis added). None of this is "actual and not theoretical" harm. *Wisc. Gas*, 758 F.2d at 674. It is purely "speculative." *Louisiana*, 55 F.4th at 1034.

Second, Movants' requested relief would not be equitable or in the public interest. They premise their requested relief—a stay of the Rule as to Texas and Mississippi pending judicial review—"solely" on the existing stay, pending judicial review, of portions of the Disapproval Rule. TX Mot. at 9 n.*; *see also id.* (reserving "right … to seek a stay … [if] the Court were to uphold" the SIP Disapproval Rule). A stay is "extraordinary" relief, *e.g.*, *Winter v. NRDC*, 555 U.S.

7, 24 (2009), and Movants seek a stay that would last well beyond any period in which they would have any legal right to one. Such a result would be inequitable.

Moreover, the combined stay and abeyance Movants request would disserve the public interest and likely harm Intervenors. Notably, EPA's Interim Final Rule has already provided complete relief to Movants—and other petitioners in this Court and others—throughout the pendency of the stays in the SIP Disapproval Rule litigation. Accordingly, there is no need for any judicial stay here. Such a stay would also add a further, unnecessary level of complication before the enormous public health benefits of the Good Neighbor Rule could go into effect. Further delay of implementation of the Good Neighbor Rule would severely harm Intervenors and their members.

Finally, Texas Petitioners and Mississippi Petitioners are unlikely to succeed on the merits because, as explained below, they have filed in the wrong venue.

## II.        An Abeyance Without a Stay Would Preserve Judicial Resources.

Because the only asserted basis for a stay here is the existence of a stay in another case and EPA has already signed the Interim Final Rule to accord Movants all the relief they seek from this Court, the proper course is abeyance alone, to preserve resources unless and until such time as Movants' challenge to the SIP Disapproval Rule is resolved.

Movants are not wrong that it would be a waste of judicial resources for the current action to proceed until after the resolution of their challenges to the SIP Disapproval Rule in No. 23-60069. *See* TX Mot. at 18. Indeed, as explained above, the Interim Final Rule, by amending the Good Neighbor Rule "while the judicial proceedings in which the stay orders were issued remain pending," only underscores how proceeding with this case at this point would be inefficient and inequitable for the parties and the Court. Interim Final Rule, *supra* n.10 at 11-12 (noting that only "[a]fter the courts have reached final determinations on the merits in those proceedings" will EPA "take further action consistent with those proceedings"). Accordingly, without ruling on venue, this Court should pause this action unless and until the Good Neighbor Rule that Movants seek to challenge is applicable to them.

## III.        Venue does not lie in this Court.

Because EPA has issued an Interim Final Rule staying the Good Neighbor Rule as to Texas and Mississippi, among other states, this Court should hold this case in abeyance without reaching the question of venue. However, if the Court reaches venue, it should decline to confirm venue. As explained below, Petitioners misinterpret the Act's venue provision. The Good Neighbor Rule is nationally applicable and, even if it were not, EPA found and published that it is based on

determinations of nationwide scope and effect. Thus, venue lies solely in the D.C.

Circuit. *See* 42 U.S.C. § 7607(b)(1).

Though Movants pretend otherwise, it is irrelevant that this Court declined

to transfer challenges to EPA's disapproval of states' implementation plans to the

D.C. Circuit. *See* TX Mot. at 12 (citing Order, Texas v. EPA, No. 23-60069, at 13

(5th Cir. May 1, 2023) (per curiam) ("*Texas 2023 Order*")). The unpublished order

concerned only the pending motions as to EPA's disapproval and expressly binds

neither the merits panel in that case nor the Court here. *Texas 2023 Order* at 24.

### A. The Rule is nationally applicable.

Movants wrongly suggest that all implementation plans are by default

reviewable in the regional circuit, regardless of applicability. TX Mot. at 13.

Section 7607(b)(1) plainly states that challenges to "any" nationally applicable

final action "may be filed only in the United States Court of Appeals for the

District of Columbia." 42 U.S.C. § 7607(b)(1). As this Court has repeatedly

explained, Section 7607(b)(1) divides challenges into three general categories:

> Petitions for review of nationally applicable actions may only be
> filed in the D.C. Circuit. Petitions for review of locally or
> regionally applicable actions may only be filed in the regional
> circuit courts of appeal. Petitions for review of locally or
> regionally applicable actions based on a determination that has
> nationwide scope or effect may only be filed in the D.C. Circuit.

*Texas v. EPA*, 829 F.3d 405, 418 (5th Cir. 2016) ("*Texas 2016*"); *see also Texas v.*

*EPA*, 983 F.3d 826, 833 (5th Cir. 2020) ("*Texas 2020*"); *Texas v. EPA*, No. 10-

60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011) ("*Texas 2011*"). Moreover, this Court has correctly recognized that implementation plan actions can be "nationally applicable," when, as here, they do *not* "run only to one air quality control region." *Texas 2011*, 2011 WL 710598, at *3-4 (action issuing SIP call requiring 13 widely dispersed states to submit new SIPs is nationally applicable) (emphasis removed) (cited for this point in *Texas 2016*, 829 F.3d at 419).

Here, the Rule is nationally applicable. To address the problem of interstate pollution, the Rule applies an "overlapping and interwoven" national 4-step framework and pollution trading program to reduce pollution from 23 states from coast to coast. *EPA v. EME Homer City*, 572 U.S. 489, 496 (2014); 88 Fed. Reg. at 36,659. Applying to a "far-flung collection of states [that] comprises no 'region' of which we are aware," the Good Neighbor Rule is nationally applicable on its face. *Texas 2011*, 2011 WL 710598, at *3, 5 (an "EPA rule need not span from 'sea to shining sea' to be nationally applicable.") (cleaned up).

Further, the Rule applies a unified, national trading program that applies to 22 states across the country. The program would have enabled power plants in Texas to trade pollution allowances with, for example, plants in Michigan, New York, or Utah, and vice versa.[12] The Rule  is a single nationally applicable action

---

[12] 88 Fed. Reg. at 36,762-63 (trading program background), 36,775 ("EPA is expanding the Group 3 trading program to include … Alabama, Arkansas,

under which changes for one state have direct legal effects for other states, as illustrated by EPA's Interim Final Rule that responds to judicial stay orders of pieces of the underlying Disapproval Rule by adjusting the national trading program and thus the availability of allowances in states where no stay is formally in effect. Interim Final Rule, *supra* n.10 at 10-11 (June 29, 2023); *see also Puerto Rican Cement Co. v. EPA*, 889 F.2d 292, 299-300 (1st Cir. 1989) (EPA regulations are nationally applicable where they apply to "any State implementation plan which has been disapproved [regarding a particular program]" and "[t]he list of states changes as implementation plans are approved and disapproved" (emphasis removed)). Another state challenging the Rule highlights how interconnected the trading program is, explaining that "the current judicial stays [of pieces of the SIP Disapproval Rule] take over 40% of the total allowances out of play," and asserting "the opportunity for trading will be considerably more limited than the [federal plan] projected." [13]

---

Minnesota, Mississippi, Missouri, Nevada, Oklahoma, Texas, Utah, and Wisconsin"), 36,811 ("In the case of the states … whose sources currently participate in the Group 3 trading program—Illinois, Indiana, Kentucky, Louisiana, Maryland, Michigan, New Jersey, New York, Ohio, Pennsylvania, Virginia, and West Virginia—the sources will continue to participate in the Group 3 trading program").

[13] *See* Utah's Motion to Stay at 25, *Utah v. EPA*, No. 23-1157 (D.C. Cir. July 7, 2023), Doc# 2006816.

Movants' attempts to recast the applicability of the Rule are logically and legally untenable. Every court, including this one, that has studied the Clean Air Act's venue provision has concluded that applicability turns on the face of the rule "as a whole," with the petitioner's challenge playing no role,[14] and Movants purport to accept this correct statutory interpretation, TX Mot. at 13 (partially quoting *Texas 2016*, 829 F.3d at 419).[15] Yet Movants' venue argument depends on their having limited their petitions for review just to EPA's promulgation of implementation plans for specific states, *see* TX Mot. at 1, 15-16. Movants' attempt to dissect the Good Neighbor Rule into 23 separate actions, subject to review in all but one regional circuit, thus flies in the face of binding and persuasive precedent explaining the Act's "obvious aim of centralizing judicial

---

[14] *E.g.*, *Sierra Club v. EPA*, 926 F.3d 844, 849 (D.C. Cir. 2019) ("The court need look only to the face of the agency action, not its practical effects, to determine whether an action is nationally applicable."); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (§ 7607(b)(1) "assigns judicial review to the D.C. Circuit or the regional circuits based on the nature of the agency action in question, not the nature or scope of the petition for review" (emphasis in original)); *Texas v. EPA*, 706 F. App'x 159, 164 (5th Cir. 2017); *Texas 2016*, 829 F.3d at 419 ("Section 7607(b)(1) categorizes petitions for review according to the nature of the action that the petition challenges . . . . The question of applicability turns on the legal impact of the action as a whole."); *ATK Launch Sys. v. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011) ("The nature of the regulation, not the challenge, controls.").

[15] Texas Petitioners omit the underlined portion of the following quotation: "The question of applicability turns on the legal impact of the action as a whole."

review of national rules in the D.C. Circuit." *S. Ill. Power Coop.*, 863 F.3d at 673;

*Texas 2011*, 2011 WL 710598, at *4.

Nor does Movants' interpretation of the Act as reflexively directing review

of all implementation plans to regional circuits comport with the Act's text.

Movants rely on the canon of the last antecedent. TX Mot. at 13. However, this

canon is not absolute, for what a clause or phrase modifies "is context dependent."

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021). Here, the context does not

support application of the canon. As this Court has noted, the legislative history of

the Act indicates that the second sentence of section 7607(b)(1) was intended to

apply only to "review of the approval or promulgation of implementation plans

*which run only to one air quality control region*." *Texas 2011*, 2011 WL 710598,

at *4 (quoting S. Rep. No. 91-1196, at 41 (1970)) (emphasis in original).

Otherwise, the legislative history "evinces a clear congressional intent to

'centralize review of "national" SIP issues in the D.C. Circuit,'" to benefit from the

D.C. Circuit's administrative law expertise and promote uniform review. *Id.*

(quoting 41 Fed. Reg. 56,767, 56,769 (Dec. 30, 1976) (Comments of G. William

Frick) and noting that H.R. Rep. No. 95-294, 324 specifically "concurs … with the

comments, concerns, and recommendation contained in item No. 1 of the separate

statement of G. William Frick."). By contrast, the relevant sentence is read entirely

sensibly without the canon applying. *See Paroline v. United States*, 572 U.S. 434, 447 (2014).

Notably, all circuit-level litigation over similar federal plans has occurred in the D.C. Circuit, without any apparent objection from Movants. *See, e.g.*, *Luminant et al. v. EPA*, No. 11-1315 (D.C. Cir. Sept. 12, 2011) (challenging Cross-State Air Pollution Rule ("CSAPR")); *Texas et al. v. EPA*, No. 11-1338 (D.C. Cir. Sept. 20, 2011) (same); *Mississippi Power Company et al. v. EPA*, No. 11-1389 (D.C. Cir. Oct. 7, 2011) (same); *Texas et al v. EPA*, No. 16-1428 (D.C. Cir. Dec. 20, 2016) (challenging CSAPR Update, and arguing that the D.C. Circuit "has jurisdiction and is a proper venue for this action under 42 U.S.C. § 7607(b)(l)"); *Mississippi Power Company v. EPA*, No. 16-1440 (D.C. Cir. Dec. 23, 2016) (same); *Luminant et al. v. EPA*, No. 16-1439 (D.C. Cir. Dec. 2016) (challenging CSAPR Update). Just as those rules were nationally applicable, so too is this Rule.

### B. EPA properly found and published that the Rule is based on a determination of nationwide scope or effect.

In disputing that the Rule is based on a determination of nationwide scope or effect, Movants mischaracterize EPA's findings. TX Mot. at 16-18. "[T]he relevant determinations are those that lie at the core of the agency action." *Texas 2016*, 829 F.3d at 419. EPA reasonably found that the rule was based on a "common core" of at least three determinations of nationwide scope and effect: EPA determined that its 4-step framework applied uniformly across the covered states; determined a

uniform approach to apply to identify monitors that violate or fail to maintain the

standard; and determined its nationwide modeling using a 2016 base year projected

to 2023 was the appropriate "primary basis" for assessing air quality in applying its

4-step framework. 88 Fed. Reg. at 36,680. EPA made other key determinations of

nationwide scope or effect that form the foundation for the Rule, including,

broadly, "how to define and apply good neighbor obligations in place of the

discretion states otherwise would exercise," that the trading program for power

plants should continue with certain improvements (and that participation in the

amended trading program constitutes compliance with Good Neighbor obligations

under prior ozone NAAQS), what air pollution controls were necessary and

possible for power plants across the country in different years, and what non-

power-plant industries could be most effectively regulated to control downwind

ozone pollution. *E.g.*, *id.* at 36,657, 36,660-64 & n.21, 36,673, 36,682, 36,684-85.

Movants' arguments that the Rule is not based on a determination of

nationwide scope or effect are meritless. Their conclusory assertion (at 16) that a

federal plan must be "grounded in the same state-specific determinations as EPA's

disapproval of Texas's SIP" ignores that when EPA promulgates a federal plan, it

must go beyond determinations it makes in assessing whether a state plan meets

the Act's requirements (an assessment that itself may rest on determinations of

nationwide scope or effect) and resolve different questions—like whether and how

to implement a trading program as part of eliminating significant contribution to downwind pollution. In short, EPA did not seek to resolve "the collective and interwoven contributions of multiple upwind states" on an independent, state-by-state basis, but determined a different, nationwide approach was superior. *See EPA v. EME Homer City*, 572 U.S. 489, 514 (2014).

Movants' blinkered focus (at 17-18) on a narrow set of *other* determinations EPA may have made entirely ignores the determinations of nationwide scope or effect that EPA based the Rule on. Neither § 7607(b)(1)'s text nor this Court's binding precedent requires every determination the Rule is based on to be of nationwide scope or effect. *See* 42 U.S.C. § 7607(b)(1) (referring to "*a* determination of nationwide scope or effect" (emphasis added)); *see also Texas 2016*, 829 F.3d at 421 (finding rule under review was "not based on *any* determinations that have nationwide scope or effect" (emphasis added)).

In any event, contrary to Movants' assertions (at 18), the purportedly state-specific determinations about significant contributions and avoiding overcontrol themselves are collective questions. Whether EPA considers one state's contribution significant depends on whether more cost-effective reductions exist in other states, and whether one state is being compelled to reduce its pollution more than necessary to enable attainment downwind (*i.e.*, over-control) depends on the downwind effect of other states' pollution reductions. *See EME Homer City*, 572

21

U.S. at 513-18 (describing over-control), 519-520 (describing EPA's cost-based allocation). Movants concede EPA used a "uniform level of NOx emissions control stringency across all of the linked states," TX Mot. at 17, which as EPA explains, is set at a level that "*collectively* delivers meaningful downwind air quality improvement." 88 Fed. Reg. at 36,683 (emphasis added). Thus, the Rule is based on determinations of nationwide scope or effect, just as EPA found and published, and venue lies exclusively in the D.C. Circuit.

## CONCLUSION

For the foregoing reasons, this Court should deny Movants' request for a stay and should instead either hold these proceedings in abeyance until resolution of Petitioners' challenges to the SIP Disapproval Rule in No. 23-60069 without ruling on the motion to confirm venue or deny the motions to confirm venue.

Dated:    July 10, 2023                Respectfully submitted,

*/s/ Joshua D. Smith*
Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
415-977-5704
joshua.smith@sierraclub.org

Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001

650-388-8446
zachary.fabish@sierraclub.org

*Counsel for Sierra Club*


/s/ Kathleen L. Riley
Kathleen L. Riley
Seth L. Johnson
Earthjustice
1001 G St. NW, Ste. 1000
Washington, DC 20001
202-745-5227
202-797-5245
kriley@earthjustice.org
sjohnson@earthjustice.org

*Counsel for Air Alliance Houston,*
*Downwinders at Risk, Louisiana*
*Environmental Action Network, and*
*Sierra Club*


/s/ Shaun A. Goho
Shaun A. Goho
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
617-624-0234
sgoho@catf.us

*Counsel for Clean Wisconsin*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

The undersigned counsel states that this filing complies with Fed. R. App. P. 27(d)(2)(A) because it contains 4,666 words, excluding the caption, signature blocks, and required certifications, as counted by a word processing system and, therefore, is within the word limit. This filing also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

Dated: July 10, 2023

/s/ Joshua Smith
Joshua Smith
Counsel for Sierra Club

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: July 10, 2023

/s/ Joshua Smith
Joshua Smith
Counsel for Sierra Club

# CERTIFICATE OF SERVICE

On this 10th day of July, 2023, a true and correct copy of the foregoing Response in Opposition to Petitioners' Motions to Stay, Confirm Venue, and Hold the Case in Abeyance was filed with the electronic case filing ("ECF") system of the U.S. Court of Appeals for the Fifth Circuit, which will provide electronic notice to counsel of record.

/s/ Joshua Smith
Joshua Smith
Counsel for Sierra Club