No. 23-60300

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; PUBLIC UTILITY COMMISSION OF TEXAS; RAILROAD COMMISSION OF TEXAS; ASSOCIATION OF ELECTRIC COMPANIES OF TEXAS; BCCA APPEAL GROUP; TEXAS CHEMICAL COUNCIL; TEXAS OIL & GAS ASSOCIATION; LUMINANT GENERATION COMPANY, L.L.C.; COLETO CREEK POWER, L.L.C.; ENNIS POWER COMPANY, L.L.C.; HAYS ENERGY, L.L.C.; MIDLOTHIAN ENERGY, L.L.C.; OAK GROVE MANAGEMENT COMPANY, L.L.C.; WISE COUNTY POWER COMPANY, L.L.C.; STATE OF LOUISIANA; LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY; STATE OF MISSISSIPPI; MISSISSIPPI DEPARTMENT OF ENVIRONMENTAL QUALITY; MISSISSIPPI POWER COMPANY,
*Petitioners,*

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*Respondents,*

## LOUISIANA PETITIONERS' MOTION TO STAY RESPONDENTS' FINAL ACTION, CONFIRM VENUE, AND HOLD CASE IN ABEYANCE

JEFF LANDRY
 *Attorney General*
ELIZABETH B. MURRILL (LA 20685)
 *Solicitor General*
JOSEPH S. ST. JOHN (LA 36682)
 *Deputy Solicitor General*

LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

Courtney J. Burdette (LA 30564)
  *Executive Counsel*
Jill C. Clark, Bar (LA 33050)
  *General Counsel*
LOUISIANA DEPT. OF
 ENVIRONMENTAL QUALITY
Office of the Secretary, Legal Division
P.O. Box 4302
Baton Rouge, Louisiana 70821-4302
Tel: (225) 219-3985
Courtney.Burdette@la.gov
Jill.Clark@la.gov

Jeffrey A. Hall
Marcella Burke
BURKE LAW GROUP
1000 Main Street, Suite 2300
Houston, Texas 77002
jeff@burkegroup.law
marcella@burkegroup.law

## CERTIFICATE OF INTERESTED PERSONS

Under Circuit Rule 28.2.1, Petitioners State of Louisiana and Louisiana Department of Environmental Quality need not furnish a certificate of interested persons because they are governmental parties.

<u>/s/ *Joseph Scott St. John*</u>
Joseph Scott St. John
*Counsel for Louisiana Petitioners*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................... iii

TABLE OF AUTHORITIES ..................................................................... v

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 4

ARGUMENT ...................................................................................... 9

I.    THE COURT SHOULD STAY THE FIP FOR LOUISIANA PENDING APPEAL........................................................................................ 9

    A.    This Court has already decided all the key questions for a stay........................................................................................ 9

    B.    The IFR does not change the need for a stay............................ 11

II.    THE COURT SHOULD CONFIRM THAT VENUE LIES IN THIS CIRCUIT... 15

    A.    Venue for the petition lies here................................................ 15

    B.    The exception for rules based on a determination of nationwide scope or effect does not apply. ................................................ 19

III.    AFTER STAYING THE FIP FOR LOUISIANA AND CONFIRMING VENUE, THE COURT SHOULD HOLD THIS CASE IN ABEYANCE WHILE LITIGATION OVER THE SIP DISAPPROVAL PROCEEDS. .......................................... 25

CONCLUSION .................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Am. Rd. & Transp. Builders Ass'n v. EPA,*
  705 F.3d 453 (D.C. Cir. 2013)................................................................17

*Barnhart v. Thomas,*
  540 U.S. 20 (2003) ...............................................................................16

*BCCA Appeal Grp. v. EPA,*
  355 F.3d 817 (5th Cir. 2003)..................................................................4

*EPA v. EME Homer City Generation L.P.,*
  572 U.S. 489 (2014)...........................................................................5, 22

*Humane Soc'y of the United States v. United States Dep't of Agric.,*
  41 F.4th 564 (D.C. Cir.), *reh'g denied*, 54 F.4th 733 (D.C. Cir. 2022) .12

*In re Condor Ins. Ltd.,*
  601 F.3d 319 (5th Cir. 2010)................................................................17

*Luminant Generation Co. v. EPA,*
  675 F.3d 917 (5th Cir. 2012)..................................................................4

*Nken v. Holder,*
  556 U.S. 418 (2009)................................................................................9

*Texas v. EPA,*
  829 F.3d 405 (5th Cir. 2016)....................................................... passim

*Texas v. EPA,*
  No. 23-60069 (5th Cir. May 1, 2023).......................................... passim

**Statutes**

42 U.S.C. § 7410 ....................................................................... passim

42 U.S.C. § 7602 ......................................................................5, 9, 17

42 U.S.C. § 7607 ................................................................ 1, 15, 16, 20, 23

## Other Authorities

"Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air
Quality Standards," 88 Fed. Reg. 36,654 (June 5, 2023)............. passim

Air Plan Disapprovals; Interstate Transport of Air Pollution for the
2015 8-Hour Ozone National Ambient Air Quality Standards, 88 Fed.
Reg. 9,336................................................................... 5, 20, 21

Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air
Quality Standards; Response to Judicial Stays of SIP Disapproval
Action for Certain States (June 30, 2023).............................. 2

Joseph Goffman, Memorandum, Notice of Forthcoming EPA Action to
Address Judicial Stay Orders.................................................. 7

Nat'l Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292
(Oct. 26, 2015)........................................................................ 5

## Rules

Fed. R. App. P. 18(a)(2)(A)(i) ...................................................... 3

## INTRODUCTION

The State of Louisiana and Louisiana Department of Environmental Quality have petitioned for review of the federal implementation plan (FIP) that the U.S. Environmental Protection Agency (EPA) recently promulgated for Louisiana, which is contained within the rulemaking titled "Federal 'Good Neighbor Plan' for the 2015 Ozone National Ambient Air Quality Standards," 88 Fed. Reg. 36,654 (June 5, 2023) ("FIP rulemaking"). Louisiana here seeks a stay of that FIP, *see* Fed. R. App. P. 18(a)(2), confirmation that venue for its petition lies in this Circuit, *see* 42 U.S.C. § 7607(b)(1), and an abeyance of further proceedings pending resolution of litigation over Louisiana's related state implementation plan (SIP).

Earlier this year, EPA disapproved Louisiana's SIP concerning its obligations under the "good neighbor" provision of the Clean Air Act (CAA), alongside those for many other states. The good neighbor provision requires that states adequately prevent emissions of pollutants in amounts that significantly contribute to air quality problems in downwind states—here, a pollutant (nitrogen oxide or "$NO_x$") that forms ozone. SIP disapproval is a statutory prerequisite to promulgation of a

FIP; the FIP fills in for the inadequate SIP. Shortly after Louisiana's SIP was disapproved, a panel of this Circuit stayed that disapproval, finding that Louisiana was likely to succeed on various challenges and that the FIP (already signed but not yet promulgated through publication in the Federal Register) would cause irreparable harm. Yet EPA still went through with promulgating its FIP rulemaking, which included a FIP for Louisiana, despite having no lawful basis to do so.

Recognizing the infirmity of including a FIP for Louisiana, on June 30, 2023, EPA posted on its website an interim final rule ("IFR") that leaves the entire FIP rulemaking in place but "stays" various requirements for Louisiana. Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards; Response to Judicial Stays of SIP Disapproval Action for Certain States (June 30, 2023) (Exhibit 1). Yet the IFR is not a simple agency stay. Because previous EPA rulemakings already controlled Louisiana's and many other states' good neighbor obligations and the new FIP substantially revised that entire framework, the IFR attempts to alter the new framework to achieve a near equivalency of the status quo.

This Court has already determined that EPA has no authority to implement a FIP for Louisiana and has adjudicated that the other stay factors weigh in favor of a stay. Because the FIP will shortly become effective and EPA has already determined to forge ahead with it while adopting a convoluted additional action attempting to nullify the effects, it would be impracticable for Louisiana to seek a true stay before the EPA. *See* Fed. R. App. P. 18(a)(2)(A)(i). As discussed further below, EPA's solution does not protect Louisiana's interests.

Additionally, the order that stayed the SIP disapproval also determined that venue for that action lies in this Circuit under the CAA. Because the motions panel deciding the stay motion here will have to consider that order, it should also confirm that venue for this case likewise lies here. The same considerations apply as before—if anything, the decision is more straightforward because the venue provision is clearer about this type of regulatory action and the FIP rulemaking is more limited in scope. Deciding venue now will preserve judicial resources and ensure a more orderly course of litigation.

Finally, after granting a stay and confirming venue, this Court should hold further action on Louisiana's petition challenging the FIP in

abeyance pending the outcome of Louisiana's petition challenging the SIP disapproval action.

Counsel for Louisiana has conferred with counsel for the other parties regarding their position on these motions. The other petitioners take no position on the motion. EPA respondents agree to an abeyance but oppose the other requests for the reasons provided in related briefing and reserve the right to file a further response. Intervenors oppose the motion and reserve the right to file a response.

## BACKGROUND

1.    The CAA "establishes a comprehensive program for controlling and improving the nation's air quality through state and federal regulation." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012). The federal government sets national ambient air quality standards ("NAAQS"), but the States "bear 'the primary responsibility' for implementing those standards" by developing and implementing SIPs to enforce the NAAQS. *Id.* (quoting *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 821–22 (5th Cir. 2003)). EPA is to "assume the role of primary regulator" only if the state has "not complied with the requirements of the [CAA]." *Texas v. EPA*, 829 F.3d 405, 412 (5th Cir. 2016) ("Texas

2016"). When EPA appropriately disapproves a SIP, it may promulgate a FIP to fill in any gaps. *Id.*; *see* 42 U.S.C. §§ 7410(c)(1), 7602(y).

In 2015, EPA revised the NAAQS for ozone. Nat'l Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292 (Oct. 26, 2015). This obligated the states to submit revised infrastructure SIPs for ozone. 42 U.S.C. §§ 7410(a)(1). Louisiana submitted a separate SIP addressing the "good neighbor" or "interstate transport" provision, which requires "upwind States to reduce emissions to account for pollution exported beyond their borders." *EPA v. EME Homer City Generation L.P.*, 572 U.S. 489, 499 (2014). Under that provision, a SIP "shall contain" "adequate provisions prohibiting . . . any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]." 42 U.S.C. § 7410(a)(2)(D)(i)(I).

**2.**     EPA disapproved Louisiana's good neighbor SIP, along with those of 20 other states, in one action published in the Federal Register on February 13, 2023. Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality

Standards, 88 Fed. Reg. 9,336. Louisiana, along with Texas and Mississippi, petitioned for review of their respective SIP disapprovals in this Court. Texas and Louisiana also each moved for a stay pending appeal and opposed a motion by EPA to transfer the case to the D.C. Circuit. In the midst of that, on March 15, 2023, EPA signed a final version of the FIP rulemaking.

On May 1, 2023, a panel of this Court in that case stayed the SIP disapprovals. See Order, Dkt. 269, *Texas v. EPA*, No. 23-60069 (5th Cir. May 1, 2023) (per curiam) ("Texas 2023") (Exhibit 2). The order found that petitioners were likely to succeed on the merits because they had made "a strong showing that the EPA acted unlawfully." *Id.* at 14. The order also found that Louisiana had made a strong showing of irreparable harm because allowing EPA's action to stand "would disrupt the system of cooperative federalism enshrined" in the CAA and because the then-unpublished FIP would "strain" Louisiana's power grid. *Id.* at 23–24. And the order found that the other factors favored a stay. *Id.* at 24. The Court also determined that venue was appropriate in this Circuit. The SIP disapproval was only "locally or regionally applicable" given that its legal impact was felt only within the states whose SIPs had been

disapproved and it was not based on a determination of nationwide scope or effect because the SIP disapprovals rested on many "intensely factual determinations." *Id.* at 9–12.

**3.**    Upon entry of the order staying Louisiana's SIP disapproval, EPA no longer had statutory authority to promulgate a FIP.  It appeared that EPA might comply by not finalizing promulgation through publication in the Federal Register.  But on June 1, 2023, two-and-a-half months after signing the FIP, EPA posted a memorandum on its website indicating that EPA would instead "take action in the near future" to ensure that the FIP's requirements for states whose SIP disapprovals had been stayed would "not take effect" while the stays "remain in place."  Joseph Goffman, Memorandum, Notice of Forthcoming EPA Action to Address Judicial Stay Orders (Exhibit 3).  It was unclear what form this "action" would take.

**4.**    On June 5, EPA promulgated the FIP rulemaking through publication in the Federal Register.  It was the same as that signed on March 15 and took no account of the stays.  Louisiana, like most states, was already subject to a $NO_x$ emission budget and emissions allowance trading program for electric generating units (EGUs) from prior FIPs for

7

prior NAAQS.  The FIP rulemaking here substantially reduced that budget, imposed new obligations on those allowances, and (for the first time) imposed specific emissions controls on other non-EGU industrial sources of $NO_x$.  88 Fed. Reg. at 36,656–57.

It was not until June 30, 2023 that EPA posted the signed IFR, which was the "action" intended to "preserve the status quo."  IFR at 10.  But because EPA had already published the FIP rulemaking and sought to leave it in place in its entirety, the IFR purports to accomplish its goal in a circuitous manner.  It "stay[s] the new requirements established for EGUs and non-EGU industrial sources" by adding additional text to the regulations providing that the new obligations are stayed with respect to Louisiana.  *Id.* at 9.  And, because EPA rearranged the trading scheme and related obligations in the FIP rulemaking, the IFR moves EGUs in Louisiana and other states with stayed SIP disapprovals to a modified version of the old "Group 2" trading program.  *See id.* at 9–10.  Louisiana had already moved to the "Group 3" trading program in a previous action, so now it may trade only with Kentucky.  *Id.* at 10.

While the IFR purports to be effective on the same date as the FIP for Louisiana, *id.* at 2, it has yet to be published in the Federal Register.

8

# ARGUMENT

## I. THE COURT SHOULD STAY THE FIP FOR LOUISIANA PENDING APPEAL.

A stay of the FIP for Louisiana follows directly from the earlier order of this Court.  In deciding whether to grant a stay, courts are to consider (1) the likelihood that the petitioner will succeed on the merits, (2) irreparable harm to the petitioner absent a stay, (3) the balance of the harms to other parties, and (4) the public interest.  *Nken v. Holder*, 556 U.S. 418, 426 (2009).  This Court's prior order essentially governs each of these factors because it answered the same question of whether a FIP should be implemented.

### A. This Court has already decided all the key questions for a stay.

No dispute exists about whether EPA may lawfully impose a FIP on Louisiana.  Under the CAA, EPA's authority to promulgate a FIP springs solely from a state's failure to submit an adequate SIP.  42 U.S.C. §§ 7410(c)(1), 7602(y).  EPA's "Final SIP Denial was the statutory prerequisite for the EPA to create the Final FIP and impose its preferred system of emissions controls and reductions on the States."  *Texas 2023* at 22 (citing 42 U.S.C. § 7410(c)(1)(B)).  Because this Court stayed the SIP disapproval for Louisiana, EPA has no authority to promulgate a

FIP.  EPA has conceded as much.  IFR at 1 (noting that IFR stays "requirements for which the EPA does not currently have authority to implement a FIP").  This Court entered the stay of the SIP specifically to prevent EPA from implementing a FIP.  *Texas 2023* at 22–24.  Were this action to proceed to judgment, Louisiana would prevail.

Similarly, in entering the stay of the SIP disapproval, this Court already accepted Louisiana's position, *see* Dkt. 112-1, 112-3, *Texas v. EPA*, No. 23-60069 (5th Cir.) (stay motion and relevant attachments) (Exhibit 4), that Louisiana would suffer irreparable harm in several ways should the FIP be implemented.  Implementation would immediately "disrupt the system of cooperative federalism enshrined in the Clean Air Act."  *Texas 2023* at 23 (citing *Texas 2016*, 829 F.3d at 433).  That "inversion of the federalism principles" is an irreparable injury.  *See Texas 2016*, 829 F.3d at 434.  This Court also recognized that the "FIP will strain Texas's and Louisiana's power grids," "dramatically increas[ing] the probability of price spikes and 'load-shedding.'"  *Texas 2023* at 23.  Those injuries also constitute irreparable harm.  *Id.*; *Texas 2016*, 829 F.3d at 434 (holding that "threat of grid instability and potential brownouts alone constitute irreparable injury").

10

Finally, this Court also already determined that staying the FIP would not substantially injure EPA or undermine the public interest. *Texas 2023* at 24. This Court also pointed to "EPA's multi-year delay in disapproving . . . Louisiana's SIP[]" as "undercut[ting] any claim that time is of the essence when it comes to imposing the EPA's Final FIP." *Id.* By contrast, "the public's interest in ready access to affordable electricity" is urgent. *Id.* (quoting *Texas 2016*, 829 F.3d at 435). Again, none of these considerations have changed in the interim.

### B. The IFR does not change the need for a stay.

In preparing the IFR, EPA has effectively conceded that some stay is merited. That leaves only the question of whether a judicial stay here has been rendered unnecessary. It has not.

First, the prior stay this Court issued does not suffice because EPA has already implicitly disregarded it. That stay was intended to prevent EPA from imposing a FIP on Louisiana. *See Texas 2023* at 24. And EPA should have acted accordingly. Instead, EPA finalized promulgation of the FIP rulemaking. Even if EPA had sent the FIP rulemaking to the Office of the Federal Register by May 1, it still could have rescinded it (as agencies have done before). *See Humane Soc'y of the United States v.*

11

*United States Dep't of Agric.*, 41 F.4th 564, 575 (D.C. Cir.), *reh'g denied*, 54 F.4th 733 (D.C. Cir. 2022).  The long delay between the signing of the rulemaking and its publication implies that EPA considered as much, or at least had ample time to.  The IFR only exists because EPA did not first heed this Court's prior order and the CAA.

Second, and relatedly, EPA bears full responsibility for this predicament.  EPA should not have proceeded without legal authority to promulgate its FIP.  As this Court previously recognized, any urgency to immediately promulgate the FIP rulemaking resulted from EPA's own failure to act on the states' SIPs for years past the statutory deadline. *Texas 2023* at 24.  EPA's choice to proceed heedless of its legal obligations should not burden Louisiana.  Indeed, where EPA previously promulgated a SIP disapproval and FIP together, this Court stayed both. *Texas 2016*, 829 F.3d at 419, 435.  EPA should not obtain a better result by unlawfully proceeding to promulgate a FIP after the prerequisite SIP disapproval has already been stayed.

Third, requiring reliance solely on the IFR is unfair and impracticable.  The FIP rulemaking substantially revises numerous portions of the Code of Federal Regulations governing state emissions,

including portions for many states subject to prior FIPs—it not only creates new obligations, but also rewrites and destroys the regulations as they exist before August 4, 2023. Rather than taking the stay of Louisiana's SIP disapproval into account from the outset, EPA instead now further modifies various obligations through the IFR, including taking Louisiana out of Ozone Season Group 3 (where it has been since the Revised CSAPR Update rulemaking, *see* 88 Fed. Reg. at 36,657) and placing it in a modified Group 2, where it can trade with only one other state. The machinations purportedly serve to attempt to preserve the status quo, though they fail to replicate what existed before the FIP rulemaking.

This convoluted scheme may be challenged on various grounds. Louisiana itself may seek to challenge the IFR if EPA's makeshift revisions harm the State. It would be manifestly unfair to hold Louisiana hostage by making the IFR the only mechanism to stay the FIP. The IFR may also be subject to challenge by others. Several environmental organizations recently intervened, Dkt. 65, and they relied on their disagreement with EPA over the terms of the IFR, Dkt. 59 at 17–18. Should those organizations challenge the IFR, that would also require

Louisiana to either defend an insufficient stay by EPA that should have been unnecessary or potentially lose its protection from the FIP. And any of *those* challenges might occur in a different forum, requiring coordination with litigation in this Court. A judicial stay thus protects from unfairness and preserves judicial resources.

Finally, the IFR has, as of the time of this filing, not yet been published in the Federal Register. While EPA apparently intends to publish it prior to the August 4, 2023 effective date of the FIP rulemaking, *see* IFR at 21 (noting EPA "is making these portions of the action effective as of the Good Neighbor Plan's effective date"), nothing ensures that this occurs or that EPA does not rescind it. Furthermore, despite EPA's thorough denunciation of the need for comments pre-publication, it is nonetheless taking them for thirty days post-publication, implying further potential revisions in the near term.

Accordingly, the Court should order that EPA stay the FIP for Louisiana by respecting the same requirements that adhered prior to the FIP rulemaking: the prior emissions budget and treatment of allowances, prior emissions requirements, and the ability to trade on the prior terms

with any state in the Revised CSAPR Update Group 3 that does not have a new, unstayed FIP.

## II.    THE COURT SHOULD CONFIRM THAT VENUE LIES IN THIS CIRCUIT.

In addition to granting a stay of the FIP, this Court should also confirm that venue for Louisiana's petition lies in this Circuit under 42 U.S.C. § 7607(b)(1). The FIP rulemaking declares that any petition must be filed in the D.C. Circuit. 88 Fed. Reg. at 36,860. Even if this Court grants an abeyance, it should still confirm venue. Because this Court's previous order regarding the SIP disapprovals also renders the FIP unlawful, the panel deciding this motion will familiarize itself with that prior order and issues relating to Louisiana's challenge to the SIP disapproval. To promote judicial economy, that panel should decide venue now.

### A.    Venue for the petition lies here.

Venue lies in this Circuit under the plain meaning of the CAA. The CAA specifies in which circuit a petition for review must be brought based on the nature of the EPA action being challenged. 42 U.S.C. § 7607(b)(1). The CAA categorizes the action being challenged into two types: (1) certain specified actions and all other "nationally applicable" actions

must be filed in or transferred to the D.C. Circuit, and (2) certain other actions, including EPA's action "promulgating any implementation plan" under Section 7410, as well as all other "locally or regionally applicable" actions, must be filed in the Court of Appeals for the "appropriate" geographic circuit.    42 U.S.C. § 7607(b)(1).    This Court determines whether a petition has been properly brought in this Circuit under that venue provision de novo.  *Id.* at 420–21.

Because Louisiana's petition challenges the FIP for Louisiana, promulgated under Section 7410(c), the challenge straightforwardly falls into the second category, and venue lies here, in line with this Court's previous statutory interpretation.  *See Texas 2016*, 829 F.3d at 419 n.16. The limitation to "locally or regionally applicable" actions does not apply to actions promulgating a FIP because that provision modifies only the last part of the list, "any *other* final action."  *Id.* (emphasis added).  This Court already has credited this reading of the text, which is appropriate under the last-antecedent canon of construction.  *See id.* (citing *Barnhart v. Thomas*, 540 U.S. 20, 27–28 (2003), which applied the last-antecedent canon to restrict a modifier to the phrase it immediately followed).  The explicit designation of a FIP promulgation as in the second category also

precludes the possibility that it would fall into the catchall provision of the first for "nationally applicable" actions. *See, e.g.*, *In re Condor Ins. Ltd.*, 601 F.3d 319, 324 (5th Cir. 2010) (noting "the oft recited maxim expressio unius est exclusio alterius carries weight").

Even if it were necessary for this Court to first consider whether EPA's FIP for Louisiana is a "locally or regionally applicable" action, it straightforwardly is—hence the statute categorically treating them the same. EPA's action in "promulgating any implementation plan is the prototypical 'locally or regionally applicable' action that may be challenged only in the appropriate regional court of appeals." *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013).

The "legal impact" of the "action" controls, and the legal impact of a federal implementation plan is on the specific state for which it was promulgated. *Texas 2016*, 829 F.3d at 419. The CAA authorizes a FIP only "to fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a State implementation plan." 42 U.S.C. § 7602(y). A FIP by definition applies only to a specific state following that specific state's failing to submit an adequate state implementation plan for itself. *Id.* § 7410(c)(1); *see also* 88 Fed. Reg. at 36,675 ("[T]he EPA in effect steps

into the shoes of a state when it promulgates a FIP."). Because the CAA cabins the "legal impact" of a FIP to what the SIP itself could achieve, the FIP necessarily applies only to that state. This Court already determined that the "legal impact" of the SIP disapproval that purportedly authorized a FIP was "plainly local or regional." *Texas 2023* at 10. Where EPA's action simply constitutes the promulgation of an implementation plan and not some other nationally applicable action *related* to implementation plans, that action is necessarily "locally or regionally applicable." *Id.* at 9–10 (collecting cases and noting related actions like SIP calls). Here, the action simply promulgates FIPs. 88 Fed. Reg. at 36,654.

That EPA "packaged" 23 FIPs together does not make the entire action "nationally applicable" because "EPA's chosen method of publishing an action isn't controlling." *Texas 2023* at 9. The CAA controls, and on this point "is very clear: The relevant unit of administrative action here is the EPA's individual" FIP approvals. *Id.* As required by the statute, EPA separately considered the requirements necessary to impose on each state based on each state's failure to submit an adequate SIP to ensure that each met its good neighbor obligations.

*See* 88 Fed. Reg. at 36,717; 36,688–89.   EPA promulgated separate requirements for each state, codified in "state-specific subparts of 40 CFR part 52" and in their emissions budgets in part 97.   *Id.* at 36,853–84; 36,890 (Louisiana revised regulations); 36,906–07.   The legal impact of each is limited to specific states and is therefore not nationally applicable.

The FIP rulemaking nevertheless asserts that it is "nationally applicable" because EPA "appl[ied] a uniform legal interpretation and common, nationwide analytical methods" and promulgated 23 FIPs across geographic areas.  88 Fed. Reg. at 36,680.  EPA made these same arguments with regard to its SIP disapproval action for 21 states.  This Court rejected those arguments in its order because none of them change the nature of the action or its legal impact under the CAA.  *Texas 2023* at 7–9.  There is no reason to treat the arguments differently here.

**B.     The exception for rules based on a determination of nationwide scope or effect does not apply.**

The CAA provides a limited exception for actions for which venue would otherwise be appropriate in the geographic circuits if they are "based on a determination of nationwide scope or effect"—like "nationally applicable" actions, they are to be filed in the D.C. Circuit.  42 U.S.C.

§ 7607(b)(1).  EPA made the prerequisite finding that its FIP action is based on such a determination.  *See* 88 Fed. Reg. at 36,860.  But this Court must make an "independent assessment."  *Texas 2016*, 829 F.3d at 421.  What matters are determinations "that lie at the core of the agency action" because the action must be "based on" them.  *Id.* at 419.  And the exception is narrow—the "default presumption" is that petitions challenging the promulgation of an implementation plan are reviewed in the geographic circuits.  *Id.*

This Circuit has already essentially determined that the exception does not apply.  The FIP rulemaking asserts that it based its conclusions on nationwide determinations, including "a common core of nationwide policy judgments and technical analysis," a "nationally consistent 4-step framework" that it has applied in prior rulemakings, "results from nationwide photochemical grid modeling," and a "nationally uniform approach to the identification of nonattainment and maintenance receptors."  88 Fed. Reg. at 36,860.  Yet EPA made these same arguments, in exactly the same language, in its prior SIP disapproval action, *see* 88 Fed. Reg. at 9,380–81, and this Circuit rejected them as sufficient to invoke the exception, *see Texas 2023* at 11–12 & n.5.  Indeed,

those arguments had even more force there because EPA purported to use that "nationally consistent" and "nationwide" framework not only for the 23 states addressed in that action, but also for the 24 other relevant states for which EPA had already approved SIPs. 88 Fed. Reg. at 9,337, 9,362. There is no reason that the use of the same framework for the smaller set of states EPA determined to need FIPs should justify the opposite result.

Though further analysis is unnecessary, the exception does not apply for several additional reasons. Where an action rests on "a number of intensely factual determinations" specific to each state, the core determinations are not nationwide. *Texas 2016*, 829 F.3d at 421. This Court has held before that FIPs fall within that description and are appropriately considered in the geographic circuits. *Id.* And in ruling on the previous SIP disapproval action upon which the FIP rulemaking is premised, this Court found that the SIP disapprovals were "plainly based 'on a number of intensely factual determinations' unique to each State." *Texas 2023* at 11.

The same is true for the FIP rulemaking. A good neighbor FIP (just like an approvable good neighbor SIP) prohibits any source or emissions

activity within the State from emitting "amounts" of pollutants that will have certain negative effects on downwind states. *See* 42 U.S.C. § 7410(a)(2)(D)(i). But at the same time, "EPA cannot require a State to reduce its output of pollution by more than is necessary to achieve attainment in every downwind State"—it can require elimination of only those "amounts" that contribute to nonattainment. *EME Homer*, 572 U.S. at 521. So EPA must make a state-specific determination of the proper amount of pollution to prohibit. That is what EPA did in the FIP rulemaking. EPA set individual state budgets based on fine-grained data on the characteristics of individual EGUs, which EPA rolled up into state totals. 88 Fed. Reg. at 36,777–83. EPA then evaluated the potential for over-control based on "particularized, record evidence" for each state. *Id.* at 36,750. These are the "core" determinations, and they are "all related to the particularities of the emissions sources in" each state. *Texas 2016*, 829 F.3d at 421.

Any other determinations in the FIP rulemaking fall well short of justifying venue in the D.C. Circuit. That EPA sought to treat similar issues consistently across states requiring FIPs does not transform them into nationwide determinations, much less "core" ones. EPA has made a

similar argument before in the context of smaller collections of combined SIPs and FIPs—that the determinations made for some would control determinations in others—and this Court has rejected it. *Id.* at 423. Adding more FIPs—still the minority of states—into the same rulemaking should not change the result. All the FIPs "are likely informed by EPA's assessment of [FIP]s from other states," and it would "reverse § 7607(b)(1)'s presumption" of review in regional circuits if the determinations made for some FIPs were "necessarily g[iven] nationwide scope or effect." *Id.*

Moreover, nothing about the nature of the action compels nationwide treatment. As EPA has consistently maintained, even here, interstate ozone transport is a "regional" problem. *E.g.*, 88 Fed. Reg. at 36,658 ("[C]ontrol strategies targeting reduction of $NO_x$ emissions are an effective method to reduce regional-scale ozone transport."), 36,660 (noting "regional, multi-state scale of this rulemaking"), 36,668 (discussing actions "EPA previously issued to address regional ozone transport").

The FIP rulemaking also acknowledges that its determinations are not nationally applicable or consistent. EPA noted that consistent

application of its framework would require FIPs for four more states (some of which had SIPs approved under a functionally different framework using different data), and two others are now linked only to a new category of downwind monitor EPA created in its final SIP disapproval action, so EPA promises to "expeditiously" perform additional analysis for all of these. 88 Fed. Reg. at 36,658, 36,717. EPA will leave in place a SIP approval for yet another state while it considers further comments that EPA's approach to that state's linkages was also inconsistent. *Id.* at 36,718. And those inconsistencies concern just the "nationally consistent" framework.

Other potential "determinations" that this Court did not previously consider are by necessity even more limited in scope and effect because they concern only those states that EPA believes require a good neighbor FIP for the 2015 ozone NAAQS. And even within *that* group, there are still differences. While EPA used a "uniform level of $NO_x$ emissions control stringency across all of the linked states" to evaluate emission reductions, *id.* at 36,719, it did not actually set emissions controls uniformly. EPA set three states' EGU emissions budgets based on less onerous emissions controls because their linked receptors are projected

24

to be in attainment by 2026, it did not require any industrial emissions controls for those states for the same reason, and it did not even subject California to an EGU emissions budget given its already low emissions from a unique mix of energy sources (including many renewables).  *See id.* at 36,659, 36,737, and 36,749.  Of course, those emissions control stringencies have no effect on states not included in the FIP rulemaking—some are not covered by any good neighbor FIP for $NO_x$, while others are covered by prior FIPs set at different stringencies and will remain in previously created trading groups.  *See* 88 Fed. Reg. at 36,659 & n.10.  Thus, all of EPA's determinations, regardless of whether they are "core," fall short of nationwide scope or effect.

### III.  AFTER STAYING THE FIP FOR LOUISIANA AND CONFIRMING VENUE, THE COURT SHOULD HOLD THIS CASE IN ABEYANCE WHILE LITIGATION OVER THE SIP DISAPPROVAL PROCEEDS.

While staying the FIP for Louisiana is necessary and confirming venue serves judicial economy, further proceedings on the challenges to the FIP would be a potential waste of resources by all involved.  This Court has already determined that Louisiana is "likely to prevail" in its challenges to EPA's SIP disapproval action.  *Texas 2023* at 14.  When that occurs, the FIP for Louisiana must be vacated based on the lack of the

statutory prerequisite action independently of any other procedural or substantive infirmities. There is thus no need to brief those now, especially because the FIP rulemaking is an atypically complex action. In the off chance the SIP disapproval survives in some form, the particular circumstances may affect EPA's future actions and provide guidance for the parties and the Court.

## CONCLUSION

The Court should stay the FIP for Louisiana according to the terms above, confirm venue lies in this Circuit, and then hold the case in abeyance pending resolution of the SIP litigation.

Respectfully submitted,

JEFF LANDRY
  Attorney General

*/s/ Joseph Scott St. John*
ELIZABETH B. MURRILL (LA 20685)
  *Solicitor General*
JOSEPH S. ST. JOHN (LA 36682)
  *Deputy Solicitor General*
LOUISIANA DEPT. OF JUSTICE
909 Poydras Street, Suite 1850
New Orleans, LA 70112
Tel: (225) 485-2458
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

Courtney J. Burdette (LA 30564)
  *Executive Counsel*
Jill C. Clark, Bar (LA 33050)
  *General Counsel*
LOUISIANA DEPT. OF
  ENVIRONMENTAL QUALITY
Office of the Secretary, Legal Division
P.O. Box 4302
Baton Rouge, Louisiana 70821-4302
Tel: (225) 219-3985
Courtney.Burdette@la.gov
Jill.Clark@la.gov

Jeffrey A. Hall
Marcella Burke
BURKE LAW GROUP
1000 Main Street, Suite 2300
Houston, Texas 77002
jeff@burkegroup.law
marcella@burkegroup.law

**CERTFICATE OF CONFERENCE**

Pursuant to Fifth Circuit Rule 27.4, counsel for Louisiana Petitioners have conferred with the counsel for the other parties regarding this motion. Counsel for the other petitioners take no position on the motion.  Counsel for EPA respondents agree to an abeyance but oppose the other requests for the reasons provided in related briefing and reserve the right to file a further response.  Counsel for intervenors oppose the motion and reserve the right to file a response.

*/s/ Joseph Scott St. John*
Joseph Scott St. John

**CERTIFICATE OF SERVICE**

I certify that the foregoing motion was electronically filed on the 17th day of July, 2023, using the court's CM/ECF system, which will provide a notice of electronic filing to counsel of record.

*/s/ Joseph Scott St. John*
Joseph Scott St. John

# CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,194 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that in compliance with the typeface requirements of Fed. R. App. P. 32(a)(5), this brief was prepared using Microsoft Office Word 2010, using Century Schoolbook 14 point font for the principal text, and Century Schoolbook 12 point font for footnotes.

Dated: July 17, 2023                    */s/ Joseph Scott St. John*
                                        Joseph Scott St. John